Michael Troy DEVINEY and Nancy DEVINEY *v.* STATE of Arkansas

CA CR 84-167                                    685 S.W.2d 179

Court of Appeals of Arkansas
Division I
Opinion delivered February 27, 1985

*Shelby R. Blackmon,* for appellants.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., fro appellee.

LAWSON CLONINGER, Judge. In this appeal of their conviction on second degree murder charges, appellants raise two points for reversal. We find neither persuasive, and we affirm the judgment of the trial court.

Appellants were married on December 24, 1983. They

each had a male child by previous marriages. Christopher Love, the son of appellant Nancy Deviney, was nearly sixteen months old at the time of his death on January 24, 1984. Appellants were charged two days later with murder in the second degree under Ark. Stat. Ann. § 41-1502 (Repl. 1977). A jury trial was held on June 11, 1984, and guilty verdicts were returned. Both appellants were sentenced to twenty years imprisonment.

The first point addressed by appellants is that insufficient evidence existed to support the jury's verdict of guilty. Most of the argument focuses upon the testimony given by a witness for the prosecution, Dr. Fahmy A. Malek, the State's Chief Medical Examiner, who performed an autopsy on the victim. Appellants contend, in essence, that Dr. Malek approached the autopsy convinced that the infant had been murdered and that his interpretation of the results merely conformed to the conclusion he had already reached. The jury thus based its verdict, appellants say, "entirely on surmise and conjecture furnished only by Dr. Malek in his effort to detect and prove child abuse." We cannot agree.

On appeal in criminal cases, we affirm if substantial evidence is present to support the finding of the trier of fact. *Holloway* v. *State,* 11 Ark. App. 69, 666 S.W.2d 410 (1984). Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other; it must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State,* 11 Ark. App. 129, 668 S.W.2d 30 (1984). We review the evidence in the light most favorable to the State. *Mooring* v. *State,* 11 Ark. App. 119, 666 S.W.2d 720 (1984). Our examination of the record convinces us that substantial evidence was presented at trial to warrant the jury's finding of guilt.

Appellants both worked at a dairy, milking cows. They began work at about 4:00 a.m. each morning and took their two infant sons with them. Inside the dairy barn was a small room warmed by an electric space heater hanging on a wall. Appellants would leave their children on a pallet prepared on the carpeted concrete floor while the parents milked cows

approximately seventy-five feet away. When they finished their work, usually around 8:00 a.m., appellants would collect the children and return home.

On the morning of January 24, 1984, when appellant Nancy Deviney tried to awaken her son Christopher, he did not respond. Appellant Troy Deviney called his employer who in turn phoned appellants' parents. An ambulance arrived, but efforts made to revive the child were futile. Christopher Love was pronounced dead upon arrival at the Conway Memorial Hospital. The autopsy report stated that the infant died as a result of a fractured skull.

Testimony at trial supported the finding of the medical examiner and pointed to the guilt of appellants. A criminal investigator for the Faulkner County Sheriff's Office testified that he was shown the child's body at the hospital and observed nicks, cuts, and bruises, principally on the face, and dried blood in the ear. He also stated that the back of the child's head appeared to have received a hard blow, as it was soft, puffy, and swollen. With appellants' consent, the investigator searched appellants' house and took a blood-stained pillow and sheet. On the basis of his observations, the investigator was of the opinion that Christopher Love had been abused and had suffered a severe injury to the back of his head.

Appellants, by all accounts, were most cooperative with the investigating authorities. They stipulated that the bloodstains on the seized pillow and sheet were from Christopher's ear. Appellant Nancy Deviney, in a statement given to another criminal investigator, said she had taken her son to two doctors for an ear infection. Appellant Troy Deviney also stated to the investigator that a doctor had seen Christopher for an ear infection. The theory proposed by appellants to explain the child's death was that Christopher suffered from slow subdural bleeding caused by his falling down steps at his grandparents' house about six weeks before his death.

This hypothesis was convincingly refuted by the Chief Medical Examiner. Dr. Malek discussed each stage of the

autopsy and explained the medical significance of various photographic exhibits of the procedure. He showed the jury broken bones in both arms and bruises on the body that were consistent with injuries resulting from child abuse. He demonstrated that two cracks appearing on the child's skull indicated that Christopher had sustained two separate hard blows that were inconsistent with injuries suffered in a fall. In Dr. Malek's opinion, the cracks in the skull had been caused by the child's head having been struck against a carpeted floor, or, when wrapped, against a wall, followed by a hard blow from an open hand. Dr. Malek explained that the gap between the cracks, the lack of a healing reaction, and the presence of blood denoted the fact that Christopher's injuries were inflicted within twenty-four hours before he died. Specifically, he found that the meningeal artery had been damaged by the blows, bleeding was fast, and unconsciousness ensued within half an hour. The injuries, he said, simply could not have been caused by a fall, as argued by appellants.

Appellants had exclusive custody and control of Christopher Love. The jury was satisfied that the medical evidence presented at trial connected the couple with the child's death. Of course, the evidence against them is circumstantial, a not uncommon situation in child abuse cases. The fact that evidence is circumstantial, however, does not render it insubstantial. *Holloway v. State, supra.* Where circumstantial evidence alone is relied upon, it must exclude every other *reasonable* hypothesis but the guilt of the accused. The question whether circumstantial evidence excludes every other reasonable hypothesis other than guilt is usally reserved for the jury. The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. The test is whether there was substantial evidence to support the verdict when the evidence is viewed in the light most favorable to the State. *Harshaw v. State,* 275 Ark. 481, 631 S.W.2d 300 (1982); *Darville v. State,* 271 Ark. 580, 609 S.W.2d 50 (1980). We believe that when this test is applied to the

present case the jury was justified in rendering its guilty verdicts.

Appellants' second argument for reversal is that the trial court erred in admitting into evidence five photographs taken by the Medical Examiner during the autopsy. The color photographs of the victim's skull and left forearm, appellants say, served merely to inflame the minds of the jurors. We disagree. Each of the photographs in question was used by Dr. Malek to illustrate his contentions that the child died as a result of blows administered and that any falls previously sustained in no way contributed.

Under Rule 403, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), the determination of whether a photograph will be admitted is governed by whether its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The weighing of the opposing factors lies within the sound judicial discretion of the trial court, and its decision will not be reversed absent a clear abuse of that discretion. *Tucker* v. *State,* 3 Ark. App. 89, 622 S.W.2d 202 (1981). *See also Gruzen* v. *State,* 267 Ark. 380, 591 S.W.2d 342 (1979). We believe that the probative value and explanatory purpose of the photographs outweighed any possible prejudicial effect upon appellants and that the trial court properly admitted the evidence.

The ghastly character of a photograph does not alone warrant its exclusion. *Tucker* v. *State, supra. See also Divanovich* v. *State,* 271 Ark. 104, 607 S.W.2d 383 (1980). In the instant case, none of the photographs was unusually gruesome; each was more clinical than sensational in character. All were necessary for a more complete understanding of Dr. Malek's testimony. No error can be detected in the second point raised by appellants.

Affirmed.

CORBIN and GLAZE, JJ., agree.