Larry Darnell WATSON *v.* STATE of Arkansas

CR 86-92                                              720 S.W.2d 310

Supreme Court of Arkansas
Opinion delivered December 15, 1986

*Etoch & Etoch*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. The appellant, Larry Darnell Watson, was charged with the capital felony murder of Sharon Diane Carter. It was alleged that Watson killed Carter while committing the felony of attempted rape. He was found guilty and sentenced to life imprisonment without parole.

Three arguments are raised on appeal: incorrect and incomplete instructions were given, inflammatory photographs were

introduced and the evidence was insufficient. All are meritless.

The only objection made to the instructions was to the court's failure to instruct the jury on manslaughter as a lesser included offense. The judge instructed the jury on the lesser offense of murder in the first degree and second degree murder. There was no rational basis for giving a manslaughter instruction as the facts will show. Ark. Stat. Ann. § 41-105(3) (Repl. 1977); *Roberts* v. *State*, 281 Ark. 218, 663 S.W.2d 178 (1984).

Appellant also argues that the court failed to instruct the jury on the elements of felony attempted rape. AMI Criminal, 1501-A "Note on Use" provides: ". . . This instruction is designed for use in defining the felony if requested by either party or if the court feels that it would be helpful to the jury." No request was made by the appellant for the court to instruct the jury on the elements of the associated felony of attempted rape under 1501-A, and we find it was not mandatory in this case for the court to do so.

Since there was no objection to the instructions given, we will not consider this argument, which is raised for the first time on appeal. *Wade* v. *State*, 290 Ark. 16, 716 S.W.2d 194 (1986); *Sims* v. *State*, 286 Ark. 476, 695 S.W.2d 376 (1985).

The photographs included several color photographs of the victim, who had been strangled in an abandoned building in sub-freezing weather, placed on a heap of trash and burned. The fire department arrived shortly after the fire began and extinguished it, but the body was extensively burned. The medical examiner testified that the photographs were necessary because they verified his opinion that the cause of death was strangulation. He explained, picture by picture, how the photographs depicted what the victim went through and how she died. He concluded the evidence suggested that strangulation occurred during sexual activity. The photographs showed the state of the victim's clothing and body posture. They showed the scarf still in a knot around her neck. The body had begun to freeze before it was burned so it had become rigid. Ten photographs were excluded by the court as cumulative.

The admissibility of photographs is within the sound discretion of the trial court and will not be reversed absent an

abuse of that discretion. *Hallman* v. *State*, 288 Ark. 448, 706 S.W.2d 381 (1986). The fact that photographs are inflammatory is not sufficient reason alone to exclude them. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Walton* v. *State*, 279 Ark. 193, 650 S.W.2d 231 (1983). Inflammatory photographs are admissible in the discretion of the trial judge if they tend to shed light on any issue, enable a witness to better describe the objects portrayed, permit the jury to better understand the testimony, or corroborate testimony. *Perry* v. *State*, 255 Ark. 378, 500 S.W.2d 387 (1973). The medical examiner testified the photographs in this case especially supported his conclusions. We find no abuse of discretion.

Was there substantial evidence to support the verdict? The facts presented by the state showed that the appellant had threatened to kill the victim about five weeks before her murder. The victim's brother testified the threat was made in his presence.

The fact that the victim was murdered was not disputed. The victim was last seen between the hours of 11 p.m. and midnight at the Plaza Social Club. It was 12° with snow on the ground according to one witness. Watson was seen at his grandmother's house by his brother about the time the fire trucks arrived at the abandoned building. Watson woke his brother when he entered a bedroom to get some clothes. The fire chief testified his department responded to the fire at 12:25 a.m. Watson left as the fire trucks were arriving. Watson resided at his grandmother's house which is a block and a half from the building in which Carter was killed.

The fire department arrived quickly after the fire was reported, and little structural damage was done to the building. The building was an abandoned residence and grocery store. According to the testimony, it appeared that the victim had been dragged from one room to another, placed on top of the trash heap, and the heap ignited. The victim was in a fixed position with her legs spread. Her panties and slacks were pulled down, remaining only on one leg. Her blouse was pulled up above her breasts. Her body was frozen in a posture suggesting sexual intercourse had occurred.

The medical examiner testified he was certain that the victim had been strangled to death. A scarf, tied in a hard knot,

was still around the victim's neck. Tests showed there was no soot or smoke in her lungs or windpipe nor was there carbon monoxide in her blood. Her eyes were bulging and her tongue was protruding. The voice box was broken and a bruise was found on the neck caused by the knotted scarf. All of these facts proved the cause of death was strangulation according to the examiner. There was evidence of semen in her sexual organs. Because of the freezing weather, the body was fixed in a position which suggested a sexual act. The exposure of the genital organs and the position of the victim's clothes also suggested sexual activity. The medical examiner did not find any other bruises on the victim; however, this fact did not rule out rape because some women do not physically resist in a helpless situation.

When first questioned, Watson denied any knowledge of the crime. He also denied ever being in the building. Later, during questioning, he did admit being there. At first he said he burned the body. Then he said, "I was there when she was killed; I burned the body." He said he burned the body with the intention of burning the whole house and destroying any evidence that might have been at the scene. He described to the officers how he had taken old "pieces of furniture, paper, garbage bags, and junk, and piled it up in a pile and threw the body on top and set it on fire." The officers testified they did not tell Watson about the pile of trash during their interrogation of him.

The defendant did not testify. His defense was essentially the state had not proved he killed her, and certainly not during an attempted rape. Watson's grandmother testified that he came to her house after 11 p.m. on the evening in question, fixed himself something to eat, watched T.V. with her and left. She could not recall what time it was, but about five or ten minutes after he left, she noticed the "lights from the police cars" down the street.

The question is whether there was substantial evidence to support the jury's finding. *Dix* v. *State*, 290 Ark. 28, 715 S.W.2d 879 (1986); *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986).

In *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984), we defined the legal test for reviewing cases with only circumstantial evidence:

> . . . [T]he question of whether the circumstantial evidence excludes every other reasonable hypothesis is for the fact finder to determine . . . Our responsibility is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture . . . On appeal the evidence will be viewed in the light most favorable to the appellee, and the jury verdict will be affirmed if there is sufficient evidence to support it . . .

The jury could consider Watson's statements, which at first were denial, then an admission of being there and then a statement that he burned the body to hide the evidence. A jury may consider and give weight to any false, improbable, and contradictory statements made by an accused explaining suspicious circumstances. *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983); *Dix* v. *State, supra.*

There was no hint that anyone else was there except Watson. All circumstances pointed to him. He had threatened to kill the victim. She was strangled during some sort of sexual activity. The body was placed on a trash heap, all depicted by the photographs, and set afire. Watson described how he had gathered the trash. He lived nearby and at first said he had never been in the abandoned structure. Yet his statement to officers later was entirely different. He said he was going to destroy the evidence. What evidence? The jury was entitled to conclude that Watson strangled his victim while attempting to rape her. We find substantial evidence to support the verdict.

Since this is a life imprisonment case, we have considered all other possible errors and find none. See Ark. Stat. Ann. § 43-2725 (Repl. 1977); Rule 11(f) of the Rules of the Arkansas Supreme Court.

Affirmed.