Bruce PAYNE *v.* STATE of Arkansas

CA CR 87-20                                    731 S.W.2d 235

Court of Appeals of Arkansas
Division II
Opinion delivered June 17, 1987

244

*Wayland A. Parker, II*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven, III*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Bruce Payne was convicted of the first degree battery of Tiffany Bailey and of failure to appear. He was sentenced to 20 years imprisonment on the battery charge and 10 years on the failure to appear charge. The trial court ran the sentences concurrently.

On appeal, Payne argues that the evidence at trial was insufficient to support the jury's verdict. We disagree and affirm.

Bruce Payne was the live-in boyfriend of Shelly Bailey. They lived in Waldron with Ms. Bailey's 11-month-old daughter, Tiffany.

On August 18, 1984, Payne and Bailey brought Tiffany to the office of Dr. Young in Waldron. The child had a broken neck. Payne told Dr. Young that she had hurt herself falling off a porch step several days before. Payne also told Dr. Young that the night before the child had fallen off a couch. Janis Mays, a social worker who investigated the case later that day, testified that Shelly Bailey, the child's mother, gave her virtually no explanation for the situation.

Apart from the neck injury, bruises were found on the child's head, face, tongue, forearm, chest, abdomen, shoulders, hip, and genitals. The child also had multiple rib fractures.

The broken neck was by far the most serious injury to the

child. The fracture had dislocated and the spinal cord had been sheared. The medical evidence was that, while the child may have some use of her arms, she will never walk or regain control of her bodily functions.

After examining the child Dr. Young formed a diagnosis of battered child syndrome. He testified that the injuries he observed were not consistent with the history that Payne gave. Payne gave the following written statement to the local sheriff:

> On Thursday, August 16, 1984, I, Bruce Payne, was taking Tiffany Bailey in my home and I went out the back door to check on my grapes and two or three minutes later she (Tiffany) came to the back door and fell down the rock steps. I picked her up and brought her in and she cried for just a minute so I put her to bed. Shelly was in another part of the house and could see what happened and met me. On Friday, the 17th of August I gave her her bottle on the couch and I was watching T.V. when she fell off the couch on her head. She cried for just a little bit and stopped. Shelley was in the kitchen and heard it happen. She or I put Tiffany to bed. This morning Tiffany did not want to eat or move. That's the reason we brought her to the doctor.

Sheriff Daggs testified that Payne told him the steps were eight feet tall, but that when he went to the house and located the steps they were only slightly over three feet tall.

Dr. Fulbright, a neurosurgeon, gave his opinion that the child's injuries were not consistent with the history given by Payne. Dr. Woody, a pediatric neurologist, testified that the injury was not the result of an accident and that the type of force required to produce the neck injury was a direct blow to the neck with a baseball bat.

On appeal, Payne argues that there is no substantial evidence that he was the one to harm the child. While the evidence is admittedly circumstantial we believe it is sufficient to support the jury's verdict.

*Deviney* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985), was similar to the case at bar. In *Deviney*, Michael and Nancy Deviney were convicted of the second degree murder of her 16-

month-old son, who died of a fractured skull. There were no witnesses. In addition to the fractured skull, the medical examiner found broken bones in the child's arm and bruises on the body. He testified that the injuries could not have occurred from falling down steps, as the Devineys contended.

In affirming the convictions we said:

Appellants had exclusive custody and control of Christopher Love. The jury was satisfied that the medical evidence presented at trial connected the couple with the child's death. Of course, the evidence against them is circumstantial, a not uncommon situation in child abuse cases. The fact that evidence is circumstantial, however, does not render it insubstantial. *Holloway* v. *State, supra.* Where circumstantial evidence alone is relied upon, it must exclude every other *reasonable* hypothesis but the guilt of the accused. The question whether circumstantial evidence excludes every other reasonable hypothesis other than guilt is usually reserved for the jury. The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. The test is whether there was substantial evidence to support the verdict when the evidence is viewed in the light most favorable to the State. *Harshaw* v. *State*, 275 Ark. 481, 631 S.W.2d 300 (1982); *Darville* v. *State*, 271 Ark. 580, 609 S.W.2d 50 (1980). We believe that when this test is applied to the present case the jury was justified in rendering its guilty verdicts.

In addition, a jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances. *Watson* v. *State*, 290 Ark. 484, 720 S.W.2d 310 (1986).

Substantial evidence is that which is more than a scintilla and must do more than create a suspicion of the existence of the fact to be established; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983);

*Phillips* v. *State*, 271 Ark. 96, 607 S.W.2d 664 (1980). When we consider the defendant's improbable statement in this case together with the nature of the injuries to the child, the medical opinion evidence, and the defendant's opportunity, we are persuaded that, taken together, they are sufficient to constitute substantial evidence of guilt. *See Dix* v. *State*, 290 Ark. 28, 715 S.W.2d 879 (1986).

 Appellant also argues that the evidence was insufficient to sustain a conviction for failure to appear. Ark. Stat. Ann. § 41-2820 (Repl. 1977) provides that a person commits the offense of failure to appear if subsequent to having been lawfully set at liberty upon condition that he appear at a specified time, place, and court, he fails to appear without reasonable excuse. The commentary to this statute indicates that "reasonable excuse" is a defense.

It was stipulated that appellant did not appear on the date he was originally set for trial. Bob Sharnas, the appellant's bondsman, testified that on the Thursday before the Monday he was to appear for trial Sharnas attempted to contact Payne and was not able to get Payne to return his calls. He learned that Payne was in the hospital because he had "just flipped out," and Sharnas went to the hospital in Konawa, Oklahoma. Sharnas was unable to learn anything about Payne's condition. It does not appear from the record that Payne ever notified the court or his attorney of any problem. The result was that the court convened on the date of trial, with the subpoenaed witnesses present but without the defendant. Payne's mother testified that when he started to go see his lawyer, right before the trial, he broke down and got sick. Payne offered no medical evidence as to what condition he might have been suffering from.

 It was Payne's obligation to establish to the satisfaction of the jury that he had a reasonable excuse for his failure to appear. On the particular facts of this case we hold that the jury was entitled to find that Payne did not meet his burden in this regard.

Affirmed.

MAYFIELD and COULSON, JJ., agree.