Donna Sue REAMS *v.* STATE of Arkansas

CA CR 93-312                                      870 S.W.2d 404

Court of Appeals of Arkansas
Division II
Opinion delivered February 9, 1994
[Rehearing denied March 16, 1994.]

*Martin E. Lilly*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant was convicted by a jury of battery in the first degree and permitting abuse of a child. She was sentenced to twenty years on the battery charge and ten years for permitting abuse of a child, each sentence to run concurrently. On appeal, appellant argues that the evidence was insufficient with regard to both convictions. We disagree and affirm.

On October 27, 1991, appellant and Dan Hamblen took their five-week-old son to the emergency room at Methodist Hospital in Jonesboro. It was discovered that the child had two broken legs, bruises covering the palms of his hands, bruises on his left ear, the back of his neck, upper arms, abdomen and his back.

Also, the child had a dislocated hip, cigarette burns on his arm and a cerebral edema.

Ms. Tammy Summer, a licensed practical nurse at Methodist Hospital, testified that the child was brought into the hospital with bruises completely covering the palms of his hands, left ear, back of his neck, upper arms, abdomen and chest. Ms. Summer stated that whenever anyone would approach his crib or touch him, the child would jerk and shake from the top of his head to the bottom of his feet as if he were frightened.

Terri Wilkins, pediatric nursing coordinator at Methodist Hospital, testified that the child had numerous bruises and explained that the bluish color of the bruising indicated that they were done within the week. Ms. Wilkins also stated that the child was underweight, had soft tissue injuries, fractures, a scratch mark on his back, cigarette burns, a dislocated hip and a cerebral edema.

Dr. John Woloszyn testified that the child's injuries were caused by child abuse. He examined the baby's legs and discovered two broken bones in both legs. According to Dr. Woloszyn, it would have taken great force to have broken the child's legs. He described the condition of the baby's brain as having a hydroma caused by violent shaking. He also noted that no new bruises appeared while the child was in the hospital.

Dr. L.K. Austin, a pediatrician, testified that he observed the baby the night he was brought into the emergency room. According to Dr. Austin, appellant stated that the child had fallen out of his crib. Dr. Austin opined that, after observing the bruising and broken legs of the five-week-old baby, he believed the child had been abused. Dr. Austin also testified that it would require extreme force to cause bruising of the kind found on this child. He also stated that the fractures of the legs could not have been done accidentally.

Appellant testified that she had exclusive control of her son. She stated that she was home with the baby all day and that she and Mr. Hamblen were with him at night. Appellant also admitted that she was the only one in the house that smoked. Appellant denied any involvement or knowledge concerning the injuries to her child. However, appellant admitted lying to Deputy Mox-

ley when she said she did not know what happened to her baby. She admitted telling Charlie Beal of the Arkansas State Police that she saw Dan Hamblen shake the baby and yell at the child.

Virginia Breckle, the baby's grandmother, testified that she took care of the baby for twenty minutes when he was four weeks old, and other than that, appellant and Dan Hamblen had exclusive control of the child.

Debbie Shelton, the child's paternal aunt, testified that appellant stated that the baby has never been with anyone else. Appellant also stated, according to Ms. Shelton, that "if one of us had to go down, we've got our story straight." Ms. Shelton obtained custody of the child after he left the hospital. Ms. Shelton testified that when she first had custody of the baby he was jumpy when not held close and would cry out and scream.

On appeal, appellant argues that there is no substantial evidence that she was the one that harmed the child and thus there is no substantial evidence to support the battery conviction. Noting that the proof was entirely circumstantial, she asserts that the evidence must be consistent with the guilt of the accused and inconsistent with any other reasonable hypothesis. While the evidence is admittedly circumstantial, we believe it is sufficient to support the jury's verdict.

The decision in *Payne* v. *State*, 21 Ark. App. 243, 731 S.W.2d 235 (1987), also involved the question whether there was substantial evidence to support a conviction for battery in the first degree of a child. In *Payne*, Bruce Payne was convicted of the first degree battery of an 11-month-old child. The child was taken to the office of Dr. Young by Mr. Payne and the child's mother, Shelly Bailey. The child had a broken neck, bruises on her head, face, tongue, forearm, chest, abdomen, shoulder, hip and genitals. She also suffered from multiple rib fractures. Dr. Young opined that the child suffered from battered child syndrome. Mr. Payne gave a statement in which he said that the child fell down some rock steps and a day later fell off the couch. Dr. Fulbright, a neurosurgeon, opined that Mr. Payne's explanation of what occurred was not consistent with the child's injuries. Dr. Woody, a pediatric neurologist, testified that the injury was not the result of an accident and that the type of force required to produce the neck

injury was a direct blow to the neck with a baseball bat. We found the circumstantial evidence sufficient to support the verdict of guilt.

Also, in the case of *Deviney* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985), a 16-month-old child died from a fractured skull which was the result of child abuse. In that case, there were no witnesses, the parents had exclusive control of the child, and the medical examiner also found broken bones in the child's arm as well as bruises on the body. The medical examiner testified that the injuries could not have occurred from falling down steps, as the Devineys contended. From the facts in that case, we found that the jury was justified in rendering its guilty verdicts.

Arkansas Code Annotated § 5-13-201(a)(3) (1993) provides that:

(a) A person commits battery in the first degree if:

(3) He causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life.

■■ The responsibility of the appellate court is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Watson* v. *State*, 290 Ark. 484, 720 S.W.2d 310 (1986). The fact that evidence is circumstantial, however, does not render it insubstantial. Where circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis but the guilt of the accused. The question whether circumstantial evidence excludes every other reasonable hypothesis other than guilt is usually reserved for the jury. *Deviney* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179. The jury is not required to believe the accused's version of the events because she is the person most interested in the outcome. *Irvin* v. *State*, 28 Ark. App. 6, 771 S.W.2d 26 (1989). The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. The test is whether there was substantial evidence to support the verdict when the evidence is viewed

in the light most favorable to the State. *Deviney* v. *State*, 14 Ark. App. 70, 685 S.W. 2d 179. In addition, a jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances. *Payne* v. *State*, 21 Ark. App. 243, 731 S.W.2d 235 (1987).

■ When we consider the appellant's improbable statements in this case along with the nature of the injuries to the child, the medical evidence, opinions of the physicians and the appellant's opportunity, we are persuaded that, taken together, the evidence is sufficient to constitute substantial evidence of guilt.

Appellant also challenges the sufficiency of the evidence with regard to the conviction for permitting child abuse.

Arkansas Code Annotated § 5-27-221 (1993) provides:

(a)(1) A person commits the offense of permitting abuse of a child if, being a parent, guardian, or person legally charged with the care or custody of a child, he recklessly fails to take action to prevent the abuse of a child who is less than eleven (11) years old.

(2) It is a defense to a prosecution for the offense of permitting abuse of a child if the parent, guardian, or person legally charged with the care or custody of the child takes immediate steps to end the abuse of the child, including prompt notification of medical or law enforcement authorities, upon first knowing or having good reason to know that abuse has occurred.

■ Appellant testified that she saw Mr. Hamblen shake the child on three separate occasions. With regard to the last episode, appellant stated that Mr. Hamblen shook the baby so hard it scared her. She also testified that she observed the bruises and cigarette burn on the child but did not ask how the injuries occurred. Appellant admitted seeing the bruises on her baby's palms but thought he "squeezed himself". She noticed red marks on his arms on Tuesday prior to going to the hospital on Sunday and did nothing about it. She thought the redness was from Dan Hamblen or herself handling the child too roughly. Appellant testified that she was with her child at all times except for twen-

ty minutes when he was with his grandmother. Dr. Woloszyn testified that a child five-weeks old would have expressed pain when his legs were broken. Based on the evidence in the record, we cannot say there is no substantial evidence to support the jury's verdict.

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.