Edith GRAHAM *v.* STATE of Arkansas

CR 05-1018                                    229 S.W.3d 30

Supreme Court of Arkansas
Opinion delivered February 16, 2006

*Erin Vinett*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Edith Graham was charged with the crime of permitting the abuse of a child. Her then-husband, Nick Graham, was charged in the same felony information with second-degree battery. *See* Ark. Code Ann. § 5-13-202 (Repl. 1997). Both charges stemmed from injuries sustained by the Grahams' son, Anthony. Prior to trial, Edith Graham moved to dismiss the charges against her, arguing that the statute under which she was charged, Ark. Code Ann. § 5-27-221 (Supp. 2003), imper-

missibly shifted the burden of proof of an essential element of the crime to the defense; she also asserted that the statute was unconstitutionally vague. The trial court denied her motion to dismiss, and the case proceeded to a bench trial, at which Edith was found guilty of permitting child abuse. After conducting a sentencing hearing, the trial court sentenced Edith to thirty-six months' probation and a $250 fine.

On appeal, Edith first argues that the trial court erred in denying her motion for directed verdict. As noted above, Edith was charged with violating § 5-27-221, which provides, in relevant part, as follows:

> (a)(1) A person commits the offense of permitting abuse of a minor if, being a parent, . . . he or she recklessly fails to take action to prevent the abuse of a minor.
>
> (2) It is a defense to a prosecution for the offense of permitting abuse of a minor if the parent . . . takes immediate steps to end the abuse of the minor, including prompt notification of medical or law enforcement authorities, upon first knowing or having good reason to know that abuse has occurred.

Edith argues that the trial court should have granted her motion for directed verdict, because the State failed to offer substantial evidence that she failed to take action to prevent the abuse of her child. A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are challenges to the sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1 (2004); *Stewart v. State*, 362 Ark. 400, 208 S.W.3d 768 (2005). When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *See Gamble v. State*, 351 Ark. 541, 95 S.W.3d 755 (2003). Only evidence supporting the verdict will be considered. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004).

To convict Edith of permitting child abuse, the State was required to prove that she was a parent; at a pre-trial hearing, Edith conceded that she was Anthony's mother. The State also had to prove that the child was being abused. To this end, the State

introduced photographs of the bruises and bite marks on Anthony. In addition, Edith called Nick to testify during her case-in-chief, and he admitted that he had hurt Anthony. The final element that the State had to prove was that Edith "recklessly fail[ed] to take action to prevent the abuse[.]" § 5-27-221(a)(1). This last element was proven primarily by the testimony of Veronica Marshall, Nick's sister and Edith's sister-in-law.

Marshall testified that she had known Edith for about ten or eleven years, four or five of which Edith and Nick had been married. Marshall stated that she became aware that Anthony was suffering some abuse when the boy was about a year old. She first observed bruises on the boy, but thought that it was "fairly common" for children to have bruises; however, when she began to see bite marks on Anthony, she started asking questions. Marshall said that the Grahams would explain the marks by saying that one of their other children had bitten Anthony.

Sometime later, Marshall testified that she went to her brother's house and asked Edith if Nick was abusing Anthony, and Edith replied that she was aware of it. When Marshall asked why Edith stayed with Nick, Edith said that she loved Nick and that she needed a babysitter. After that conversation, Marshall decided to take action herself. She began looking more closely at the baby when she was at the Grahams' house, and one day, when she went over to do laundry, she saw bruises all over Anthony's legs and arms. When Marshall took off his clothes, Anthony had bruises all over his back that looked to be in the shape of fingerprints or handprints. Marshall confronted Nick, who admitted that he had been hurting the baby. Marshall left, taking the baby with her.

The next morning, Marshall left the baby with her mother and went to the Grahams' house to talk to them about the situation. Edith said that she was going to go to Marshall's house to pick up Anthony, but Marshall was able to get to the house before Edith. Marshall then went with Anthony to the police station and reported the abuse. After that, Marshall took the baby to Arkansas Children's Hospital in Little Rock.

Edith urges that Marshall's testimony is insufficient to prove that she never took any steps to attempt to end the abuse. Edith asserts that Marshall could not have definitively known if Edith failed to take action to prevent the abuse, because Marshall was only at the Graham household once a week or so. Thus, Edith posits, Marshall had no idea what happened on the other six days

a week when she was not around. Edith also contends that, because the statute does not define what it means to "fail to take action to prevent the abuse," the State did not prove that Edith absolutely failed to take action. She states, "The State did not prove that [she] never spoke with her abusive husband and never pleaded with him to stop the abuse. The State did not prove that she never sought other help, such as the help of a neighbor. . . . There are limitless scenarios that might qualify as 'taking action,' and the State failed to disprove them." In essence, Edith argues that, by failing to prove a negative, the State failed to meet its burden of proof.

Only one other Arkansas case involved a question of the sufficiency of the evidence under this statute. In *Reams v. State*, 45 Ark. App. 7, 870 S.W.2d 404 (1994), the court of appeals held that there was sufficient evidence to support a conviction where the defendant, Donna Reams, testified that she saw the child's father shake the child on three different occasions, on the last of which, he "shook the baby so hard it scared her." *Reams*, 45 Ark. App. at 12. Reams also testified that she observed bruises and burns on the child, but did not ask how the injuries occurred. She admitted seeing bruises on the baby's palms, but thought the baby had "squeezed himself." *Id.* She also noticed red marks on the baby's arms on Tuesday, prior to taking him to the hospital on Sunday, but did nothing about it. *Id.* On these facts, the court of appeals affirmed Reams's conviction for permitting child abuse.

The evidence in this case is likewise sufficient to support the verdict. Ark. Code Ann. § 5-2-202(3) (Repl. 1997) reads as follows:

> A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

The evidence in this case showed that Marshall confronted Edith with concerns that Anthony was being abused, yet after that confrontation, Marshall continued to see signs that the abuse was ongoing. The trial court could reasonably infer, from the fact that the abuse continued to occur after Edith acknowledged her awareness of it, that Edith consciously disregarded a substantial risk that the abuse existed and would continue to occur, and that she

failed to take action to prevent the abuse. The trial court clearly found Marshall's account of events to be credible, as was the court's prerogative. *See, e.g., Shields v. State*, 357 Ark. 283, 166 S.W.3d 28 (2004).

In her second point on appeal, Edith argues that the statute under which she was convicted is unconstitutionally void for vagueness; she asserts that, in prohibiting the "failure to take action," the statute gives no direction as to what "action" is required in order to meet its dictates and avoid criminal culpability. She asserts that, in order for the "fails to take action to prevent" statute to pass constitutional muster, it must give fair warning as to what action the defendant is required to take in order to avoid criminal liability. Here, Edith claims, the "permitting child abuse" statute does not give fair warning as to what actions one can take in order to avoid culpability. Accordingly, she argues that the statute is unconstitutionally vague.

As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the facts at issue. *Reinert v. State*, 348 Ark. 1, 4-5, 71 S.W.3d 52, 54 (2002). Further, when challenging the constitutionality of a statute on grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning; if, by his action, that individual clearly falls within the conduct proscribed by the statute, he cannot be heard to complain. *Id.* at 5, 71 S.W.3d at 54. That a statutory provision may be of questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue. *Id.* (citing *United States v. Petrillo*, 332 U.S. 1 (1947); *Holt v. City of Maumelle*, 307 Ark. 115, 817 S.W.2d 208 (1991)).

We cannot reach the merits of Edith's vagueness argument, because she was not an entrapped innocent and, thus, lacks standing to argue that § 5-27-221 is unconstitutionally vague. The conduct proscribed by the statute is a "failure to take action to prevent abuse." In other words, if abuse is occurring, and the defendant is aware of that abuse,[1] she is criminally liable if she

---

[1] *See Lambert v. California*, 355 U.S. 225 (1957) (holding that, a person could not be convicted consistently with due process for failure to register as a felon if the person did not know of the duty to register and there was no proof of the probability of such knowledge); *see*

does nothing to prevent further abuse. In this case, there was evidence that Edith was aware of the abuse; there was also evidence that the abuse continued to occur after Edith acknowledged her awareness of it, including testimony that Edith permitted the abuse to continue because she "needed a babysitter." This evidence indicated that Edith failed to act to prevent the abuse. Thus, her actions clearly fall within the conduct proscribed by the statute, and she cannot claim to be one of the "entrapped innocent" who did not receive fair warning of the consequences of her actions.

Affirmed.

---

*also Dailey v. State,* 65 P.3d 891 (Alaska Ct. App. 2001); 1 Wayne LaFave, *Substantive Criminal Law* § 6.2(b), at 443 (2d ed. 2003) ("Though one might otherwise be under a duty to act, so that omission to do so would ordinarily render him criminally liable, the prevailing view is that he may not be held liable if he does not know the facts indicating a duty to act."). Thus, the defendant's awareness of the duty is an element that must be established in order to find a criminal breach of that duty.