Jarrod Matthew LOAR *v.* STATE of Arkansas

CR 06-822                                                    243 S.W.3d 923

Supreme Court of Arkansas
Opinion delivered November 30, 2006

*Hubert W. Alexander,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Beth B. Carson,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Jarrod Loar was charged with being a felon in possession of a firearm after a routine pawn-shop-record check by Cabot Police Officer Chris Huggins. Following a bench trial, Loar, who had three previous felony convictions stemming from various drug charges, was found guilty. Because Loar had three prior convictions, the trial court sentenced him as a habitual offender to thirty-six months in prison. On appeal, Loar argues that there was insufficient evidence to prove that he either actually or constructively "possessed" the firearm, and that the trial court erred in denying his presentencing motion for continuance.

As mentioned, Loar was convicted of being a felon in possession of a firearm, a violation of Ark. Code Ann. § 5-73-103 (Repl. 2005). That statute provides, in pertinent part, as follows:

> (a) Except as provided in subsection (d) of this section or unless authorized by and subject to such conditions as prescribed by the Governor, or his or her designee, or the Bureau of Alcohol, Tobacco,

Firearms and Explosives of the United States Department of Justice, or other bureau or office designated by the United States Department of Justice, no person shall possess or own any firearm who has been:

(1) Convicted of a felony[.[1]]

The present appeal questions exactly what is meant by the phrase "possess or own." On appeal, Loar argues that no witnesses at his trial ever testified that he physically possessed the gun, and that the evidence also did not support a finding that he constructively possessed the gun. The evidence introduced at trial revealed the following. Officer Chris Huggins of the Cabot Police Department testified that, on September 17, 2004, he was checking the pawn records from the Cabot Pawn Shop. Huggins stated that it is "practice" that whenever such a check reveals a pawned gun, the police check to make sure that the gun is not stolen, and that the person who pawned it had not been convicted of a felony. He saw Loar's name and noted that he had pawned a gun on September 13. When Huggins ran the serial number on the gun, he discovered that the gun had not been stolen, but a check of Loar's driver's license number led Huggins to find that Loar had been convicted of two felonies in Greene County. On September 20, 2004, Huggins spoke with Cindy Boggs, one of the owners of the Cabot Pawn Shop; Boggs informed Huggins that she knew who Loar was, and that she remembered him coming in and pawning the gun.

Cindy Boggs, the State's next witness, testified that she was familiar with Loar, and that she recalled him coming into the Cabot Pawn Shop on September 13, 2004, at which time he pawned a gun. Through Boggs, the State introduced a copy of the pawn ticket, which bore Loar's signature and reflected that he pawned a nine millimeter pistol. The ticket also contained a statement that the person signing the ticket was "giving a security interest in the above goods."

Boggs stated that Loar was a regular customer at the pawn shop, and that he would come in to pawn tools on occasion. In addition, Boggs described the pawn shop's procedure when a

---

[1] Loar does not challenge the sufficiency of the State's proof of his status as a felon; the State introduced copies of Loar's convictions (possession of a controlled substance with intent to deliver, and possession of drug paraphernalia — both convictions occurred in 1996).

customer would come in to pawn a gun. She stated that, if the pawn shop employees know the customer and the customer is already in the store's computer, they "just look their name up, otherwise, we have to see their ID." Boggs stated that she did not recall exactly how Loar's transaction occurred, because it had been over a year and a half, but she said, "I just know that I have Jarrod Loar's signature on the gun pawn, and I have his signature on other pawn tickets here, so I know he was there during the transaction." She further stated that she had no doubt that Loar was the individual who pawned the gun. Finally, Boggs testified that the only person who could have redeemed the gun would have been Loar, because only the person whose name was on the pawn ticket could pick up the item.

Called during Loar's case-in-chief, Jimmy Shahan testified that the gun at issue was actually his, and that he had gone to the Cabot Pawn Shop to pawn it on September 13, 2004. However, when he went to pawn the weapon, he did not have his identification with him. He stated that he saw Loar in the pawn shop and asked if he could use Loar's license for the transaction, and Loar agreed. Shahan said that Loar never touched the gun, but simply signed the paperwork for it; Shahan took the money from the transaction.

Loar testified in his own defense, asserting that he had gone to the pawn shop that day looking for tools when he ran into Shahan, whom he had known for several years. Loar said that Shahan had a gun, but could not pawn it because he did not have his driver's license. Loar testified that the gun was never in his hands; it remained on the counter the whole time of the transaction, and Shahan took the money from Boggs.

On appeal, Loar argues that the State did not prove that he "possessed" the firearm at the time of the pawn transaction. He concedes that the pawn ticket shows that he entered into a pawn transaction involving a gun, but asserts that this was insufficient evidence of possession. When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *See Graham v. State,* 365 Ark. 274, 229 S.W.3d 30 (2006); *Gamble v. State,* 351 Ark. 541, 95 S.W.3d 755 (2003). Only evidence supporting the verdict will be considered. *Graham, supra.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel

reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.; Jordan v. State,* 356 Ark. 248, 147 S.W.3d 691 (2004).

To convict one of possessing contraband, the State must show that the defendant exercised control or dominion over it. *Stanton v. State,* 344 Ark. 589, 42 S.W.3d 474 (2001); *Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993), *cert. denied,* 510 U.S. 1197 (1994). However, neither exclusive nor actual, physical possession is necessary to sustain a charge. Rather, constructive possession is sufficient. *Stanton, supra; Bailey v. State,* 307 Ark. 448, 821 S.W.2d 28 (1991). This court has previously explained that, under our law, it is clear that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of contraband if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is, constructively possessed. *Stanton, supra; Darrough v. State,* 330 Ark. 808, 957 S.W.2d 707 (1997); *Heard v. State,* 316 Ark. 731, 876 S.W.2d 231 (1994). Moreover, in a felon-in-possession-of-a-firearm case, our court of appeals has specifically held that actual physical possession of the firearm is not necessary for conviction, nor is ownership. *See Harper v. State,* 17 Ark. App. 237, 707 S.W.2d 332 (1986).

Arkansas does not appear to have any reported cases on the specific issue of whether a defendant's signature on a pawn ticket is sufficient evidence that the defendant either actually or constructively possessed a weapon. However, a factually similar case from Louisiana is instructive. In *State v. Major,* 604 So. 2d 137 (La. Ct. App. 1992), the evidence showed that, during a routine review of pawn shop records, a Shreveport police officer discovered that appellant, John Major, had pawned two guns. A further check of Major's records revealed that he was a convicted felon. He was charged with, among other things, being a felon in possession of a firearm, and was convicted of that charge by a jury. *Major,* 604 So. 2d at 139.

On appeal, Major argued that there had been insufficient evidence to show that he ever possessed the guns. However, the Louisiana court of appeals disagreed, concluding that the element of possession had been proven by circumstantial evidence. *Id.* at 140. The *Major* court wrote as follows:

> With regard to the element of constructive or actual possession, evidence adduced at trial indicates only that defendant signed tickets

to pawn firearms on three separate occasions. The pawn tickets constitute circumstantial evidence of the fact that defendant possessed the weapons. The pawn inventory print-out and the original pawn transaction tickets only indicate that defendant entered both ...pawn shops to pawn firearms. Although defendant conceded in his statement to police and on the stand that he signed all three pawn tickets and was physically present at the pawn shop, he maintained he was simply lending his identification in order to pawn his acquaintances' guns. Even though the pawn ticket does not necessarily prove that the person who signed the ticket physically possessed the item (without additional evidence produced from a pawn broker or eye witness), defendant's signature on the pawn ticket does suggest two possibilities: 1) either defendant brought the gun into the pawn shop and pawned the gun for money, or 2) defendant accompanied a friend to the pawn shop, but did not handle the weapon. In the first instance, defendant would have actual physical possession, [and] thus be guilty as charged. However, in the second instance he could arguably be innocent.

As previously indicated, the defendant took the witness stand in his own defense and testified he did not handle the guns. The jury's verdict indicated that they did not accept his testimony as truthful. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. In the instant case, the unanimous verdict on Count 1 and the 11-1 verdict on Count 2 indicates that the jurors accepted the testimony of the state's witnesses, and rejected the testimony of the defense witnesses.

*Id.* at 141-42 (footnote and citation omitted).

██ As in the *Major* case, the evidence in the instant case showed that Loar signed the ticket to pawn a gun. This pawn ticket, introduced into evidence by the State, constitutes circumstantial evidence that Loar constructively possessed the firearm. As for Loar's and Shahan's explanation that Loar was simply loaning Shahan his identification as a favor to Shahan, the trial court was free to accept or disbelieve this testimony; here, the court clearly disbelieved the witnesses. Moreover, the pawn ticket indicated that Loar had given a security interest in the gun, and Boggs's testimony made it clear that only Loar could have redeemed the

pawn ticket and retrieved the gun. This additional evidence before the court supported an inference that Loar at least constructively possessed the weapon, and the trial court thus did not err in denying Loar's motion for directed verdict.

In his second argument on appeal, Loar argues that the trial court should have granted his motion for a continuance. At the conclusion of Loar's bench trial, the trial court requested briefs from the parties on the effect that Loar's status as a habitual offender would have on sentencing. At that time, Loar waived the thirty-day-sentencing requirement,[2] and the court set sentencing for March 9, 2006. However, before that date, Judge Lance Hanshaw, who had found Loar guilty at trial, became ill and had to be hospitalized, which led our court, on March 3, 2006, to appoint Judge Kirk Johnson to fill in for Judge Hanshaw for the dates of March 8 and 9, 2006. On March 8, 2006, Loar filed a motion for continuance, requesting that his sentencing be delayed until Judge Hanshaw could return to the bench.

However, just prior to the sentencing hearing on March 9, 2006, Judge Johnson denied Loar's motion for continuance, finding that the matter had been on the court's docket for some time, and it was "in the best interest of the defendant and the State for sentencing to proceed today as scheduled." However, Judge Johnson permitted counsel for the State and Loar to make a presentation of the facts that had been introduced at trial. After hearing the statements of counsel and testimony from Loar, Judge Johnson sentenced Loar to three years in the Arkansas Department of Corrections.

On appeal, Loar argues that "this mid-stream substitution of judges" resulted in undue prejudice, because the judge who sentenced him was not the judge who heard the evidence at his trial. In support of his argument, he cites a portion of Ark. Code Ann. § 5-4-103 (Repl. 2006), which provides that, "[e]xcept as provided by [sections of the Criminal Code dealing with the imposition of the death penalty], the court shall fix punishment as authorized by this chapter in any case in which . . . [t]he defendant's guilt is tried by the court." Ark. Code Ann. § 5-4-103(b)(2) (Repl. 2006). Loar asserts that a "proper construction"

---

[2] "The judgment of the court may be then and there entered for sentencing and the entry of the judgment may be postponed to a date certain then fixed by the court not more than thirty (30) days thereafter . . . ." Ark. Code Ann. § 16-90-105(b) (Repl. 2006).

of this statute "required Judge Hanshaw to be the 'court' who sentenced him, not a judge who was new to the case, not having heard the evidence presented in the guilt phase."

However, Loar did not raise this statutory-construction argument in his motion for continuance, or in his argument to the trial court. This court has consistently held that a party is bound by the scope of the arguments made at trial, and we will not consider an argument raised for the first time on appeal. *See, e.g., Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004); *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). Accordingly, Loar's argument on this issue is not preserved for appellate review.

Affirmed.