2010 Ark. App. 59

**Ramondo EDWARDS, Appellant**

**v.**

**STATE of Arkansas, Appellee.**

**No. CA CR 09–751.**

Court of Appeals of Arkansas.

Jan. 20, 2010.

272

Robert Neal Jeffrey, Camden, AR, for appellant.

John T. Adams, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Ramondo Edwards appeals his conviction by a Union County jury on charges of three counts of delivering a controlled substance, a Class Y felony, in violation of Arkansas Code Annotated section 5-64-401 (Repl.2006), for which he was sentenced as a habitual offender to sixty-years' imprisonment in the Arkansas Department of Correction, with seven of those years suspended. On appeal, he challenges the sufficiency of the evidence to support the conviction, specifically arguing that the State failed to prove that he purposely delivered crack cocaine. We affirm.

On April 30, 2007, Ms. Ronnie Hopkins, a confidential informant, was sent by local law-enforcement officers to 622 West First Street in El Dorado, Arkansas, to purchase crack cocaine from appellant. The controlled buy was organized after officers received numerous reports from various citizens that appellant was selling controlled substances from the residence. Ms. Hopkins worked with officers and bought thirty dollars' worth of crack cocaine while wearing a concealed camera and a covert recorder. Similar controlled buys using the same procedures were conducted on May 1, 2007, and on May 3, 2007. Each time, the contraband was sent to the Arkansas State Crime Lab for testing, and each time the substance resulted in a positive result for crack cocaine.

An information was filed on October 24, 2007, charging appellant with three counts of delivering crack cocaine for the controlled buys on April 30, May 1, and May 3, 2007, and charging him as a habitual offender with four prior convictions. An amended information was filed on November 14, 2008.

A jury trial was held on November 18, 2008, and the first witness for the State was Captain Larry Weaver of the El Dorado Police Department. He testified as to his training and experience in the narcotics division as well as the procedures used when working with a confidential informant. He explained that he had worked with Ms. Hopkins on various cases, who initially cooperated to "work off her charge" and later received compensation for her services. He indicated that Ms. Hopkins had assisted in at least fifteen convictions. Captain Weaver described the procedures utilized in the three separate controlled buys, including pre- and post-buy searches of the informant.

Sergeant Jeff Stinson testified that he had also worked with Ms. Hopkins regarding the controlled buys in this case. Sergeant Stinson corroborated Captain Weaver's testimony and further explained the procedures utilized in handling and testing

the controlled substances purchased by Ms. Hopkins from appellant. He also discussed the recording process used during the controlled buys, acknowledging that they did not maintain visual contact with the confidential informant during the actual buy, but rather relied on the recordings made of the event. Sergeant Stinson also described the scene when he and the SWAT team converged on the residence.

Ms. Hopkins testified next and explained her criminal history and experience in working as a confidential informant. She testified as to the details of the three separate controlled buys and identified appellant as the person from whom she purchased the crack cocaine on each of the three occasions.

Nick Dawson, a drug chemist from the Arkansas State Crime Lab, testified for the State regarding the results of testing performed on the substances obtained by Ms. Hopkins during the three controlled buys. Each tested positive for cocaine base and was characterized as larger than a typical rock of cocaine but still less than a full gram. Lisa Wilcox, a forensic chemist for the Arkansas State Crime Lab, also testified regarding the testing procedures performed on the substances as well as chain of custody and packaging.

The State rested, and appellant's counsel made directed verdict motions on each of the three counts, stating each time that the State had failed to offer substantial evidence to show that appellant purposely delivered crack cocaine. The circuit court denied the motions.

The defense called Steven Smith to testify. Mr. Smith explained that he was currently an inmate at the Arkansas Department of Correction serving time for delivering a controlled substance. He testified that he knew appellant and that appellant used to hang out at the residence on West First Street where Mr. Smith sold

drugs. Mr. Smith testified that appellant never sold drugs and that he specifically did not sell drugs on the three days in question.

The defense then rested, and the motions for directed verdict were renewed on the same grounds and were again denied. Appellant was found guilty of all three counts and sentenced as previously set forth. A judgment and commitment order was entered on December 10, 2008, and appellant filed a timely notice of appeal on December 18, 2008. This appeal followed.

## Standard of Review

When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *White v. State*, 98 Ark. App. 366, 255 S.W.3d 881 (2007). Only evidence supporting the verdict will be considered. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Graham v. State*, 365 Ark. 274, 229 S.W.3d 30 (2006). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* Credibility determinations are made by the trier of fact, who is free to believe the prosecution's version of events rather than the defendant's. *See Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001).

## Discussion

Arkansas Code Annotated section 5–64–401 (Repl.2006) provides that it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance. Section 5–2–203(b) (Repl.2006) specifies that if a statute defining an offense does not prescribe a culpable mental state, a

culpable mental state is nonetheless required and is established only if a person acts purposely, knowingly, or recklessly. Section 5–2–202 (Repl.2006) provides in relevant part:

(1) "Purposely." A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result;

(2) "Knowingly." A person acts knowingly with respect to:

(A) The person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or

(B) A result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result;

(3) "Recklessly."

(A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

Appellant maintains that, in order to sustain the charges of delivery of a controlled substance, the State had to prove that appellant formed the specific intent to sell crack cocaine for money. He urges that the State had to show that he purposely or knowingly delivered crack cocaine to a police informant and claims that he never formed the necessary criminal intent during the alleged deliveries. Appellant acknowledges that his actions make him appear guilty and concedes that the State's evidence clearly shows that he was present when the confidential informant purchased the crack cocaine on the three occasions. However, he maintains that Mr. Smith's testimony established that appellant did not purposely or knowingly deliver crack cocaine on the dates in question. Accordingly, he submits that the State failed to offer substantial proof to support his convictions and that the circuit court erred in denying his motions for directed verdict.

The State notes that appellant, in citing section 5–2–203, argues that the State was required to prove that he purposely or knowingly delivered crack cocaine to a police informant. The State questions why appellant omitted "recklessly" from his formulation of the mental-state element of the case and what "specific intent" he asserts the State must prove. Additionally, the State asserts that appellant makes this confusing argument without citation to supporting authority, and appellate courts do not consider assignments of error presented without either authority or convincing argument. *See Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). The State contends that, based upon that alone, appellant's convictions could be affirmed.

■ We agree with the State that the evidence supporting appellant's convictions is substantial. Captain Weaver testified that his office received multiple calls indicating that appellant was engaged in selling controlled substances. He explained his supervision over the controlled buys of crack cocaine from appellant to confidential informant Ronnie Hopkins. Sergeant Stinson reiterated much of the information provided by Captain Weaver, including that Ms. Hopkins had been a reliable informant for their office on several prior cases.

Evidence was submitted that the substances purchased by Ms. Hopkins from appellant tested positive for crack cocaine. Additional evidence included still photographs and video footage taken by hidden cameras showing the transactions between Ms. Hopkins and appellant. Ms. Hopkins also testified at the trial, explaining her working relationship with the El Dorado Police Department Narcotics Division. She explained how she worked with Captain Weaver and Sergeant Stinson to make the controlled buys from appellant and confirmed the accuracy of the video footage of the controlled buys presented by the State.

Arkansas courts have consistently made clear that a presumption exists that a person intends the natural and probable consequences of his acts. *White, supra* (affirming a conviction for possession of cocaine and possession with intent to use drug paraphernalia). Like all factual questions, the question of a defendant's intent or state of mind is for the trier of fact to decide, based upon the evidence presented. *Id.* Additionally, the trier of fact is allowed to draw upon common knowledge and experience to infer the intent from the circumstances. *Id.*

Evidence was presented that indicates on three occasions Ms. Hopkins assisted Captain Weaver and Sergeant Stinson in making controlled buys of crack cocaine from appellant. On each occasion, Ms. Hopkins gave appellant thirty dollars in cash in exchange for a corresponding amount of crack cocaine from appellant. All three exchanges were captured in still photographs and video footage. The jury had substantial, if not overwhelming, evidence from which to infer with reasonable certainty from the circumstances that appellant ₈"formed the necessary criminal intent" to sell Ms. Hopkins crack cocaine

during those encounters. Accordingly, we affirm.

Affirmed.

MARSHALL and BAKER, JJ., agree.