BRANDON J. HARRISON, Judge
Jonathan Snow appeals his convictions for first-degree battery and first-degree endangering the welfare of a child. He argues that his convictions relied solely on circumstantial evidence and that the jury was forced to rely on speculation and conjecture. We reverse and dismiss the battery conviction but affirm the endangering-the-welfare-of-a-child conviction.
On 21 September 2016, Snow was charged with battery in the first degree and endangering the welfare of a minor in the first degree. The State alleged that Snow had abused his three-week-old infant, causing bruises, a broken clavicle, severe brain injuries, and seizures. Alyssia Kirby, the baby's mother, was also separately charged. At a jury trial in October 2017, Officer Jay Volkman with the Mountain Home Police Department testified that on 23 February 2016, he received a report from the child-abuse hotline via the Arkansas State Police Crimes Against Children Division. Volkman testified that he and Special Agent Becky Vacco questioned Snow and Kirby at their apartment on February 25. According to Volkman, Snow said he did not know how the injuries had happened, but Kirby did provide an explanation for how the injuries had happened. But after a hearsay objection, Volkman was not permitted to repeat what Kirby had said. Volkman also said that Kirby provided an explanation for the bruising on the baby's face, but he did not say what that explanation was. Snow told Volkman that the baby had begun having "fits" and that he did not realize that the baby was having seizures. Snow voluntarily showed Volkman videos that he had *292 taken on his cell phone of the baby having several so-called "fits" and explained that he made the videos to later show to the doctor. Snow said he did not take the baby to the emergency room because he did not think it was serious and the baby did not have a fever. According to Snow, the baby had started having these "fits" on Saturday, February 20. Snow also stated that he and Kirby were the only people who had taken care of the baby since his birth, and he denied that either he or Kirby had hurt the baby.
On cross-examination, Volkman agreed that Kirby had spoken during the interviews much more than Snow and that Kirby had never indicated that Snow might have caused the injuries. Volkman also said that in addition to making the videos of the baby to show to the doctor at a later point, Snow also spoke to a friend about what he should do. Volkman acknowledged that Kirby had been charged as well and that it was a "possibility" that Snow had not committed the crimes. Volkman also testified that Kirby is ten years older than Snow, that she has five children, and that one of those children is in the custody of an aunt because of a drug charge.
Special Agent Vacco with the Arkansas State Police testified that "they," meaning Snow and Kirby, had no explanation for the broken clavicle, said that a seat-belt latch had fallen onto the baby's cheek and caused the bruise, and said that another child had dropped the baby on the bed. Snow also showed Vacco the recordings of the baby's seizures and consented to a search of his phone. On cross-examination, Vacco clarified that Kirby had done the majority of the talking and that she (Kirby) had provided the explanation about the seat-belt latch falling onto the baby's cheek. Vacco agreed that Snow had given no explanations for any of the injuries. She also agreed that both Snow and Kirby were charged in the matter and that, in her opinion, they were both responsible for the injuries.
Dr. Michael Adkins testified that he was the baby's attending physician after delivery (the baby was born on 27 January 2016). Dr. Adkins saw the baby when he was eight days old, on February 4, and he had no acute issues. On February 22, Kirby presented the baby for treatment, stating that he had jaundice and had not been eating well. Kirby did not mention any fits, bruising, respiratory problems, or other injuries. Dr. Adkins stated that when he saw the baby, he saw "essentially, a lifeless infant." Dr. Adkins testified that the baby had bruises on his head and around his eye and was in distress. Dr. Adkins examined the baby and noticed him "tremoring and likely seizing," so the doctor called an ambulance and the police. When Dr. Adkins asked Kirby about the injuries, she reported that the baby had been hit by a seat-belt buckle. And when asked why she did not seek medical attention sooner, she said, "I don't know." On cross-examination, Dr. Adkins testified that he did not know who or what had caused the baby's injuries.
Dr. Karen Farst testified that the baby was admitted to the pediatric intensive care unit at Arkansas Children's Hospital on 23 February 2016. She testified that the baby was in a "life-threatening and very critical condition" when he was admitted. She said that he had bruising on his face and appeared to be seizing. The baby was also dehydrated and was put on a breathing machine. Dr. Farst explained that medical testing showed that the baby had several areas of bleeding around his brain as well as injuries to the brain tissue. She said this type of trauma is most commonly caused by a significant contact or impact injury. She explained that his injuries resulted in dead brain tissue in a large part *293 of his brain, that he has very delayed developmental skills, and that he has ongoing seizure problems. She could not say who had caused the injuries or precisely how they occurred, but she did state that if the baby had been given medical treatment sooner, the outcome would not have been as severe.
The State also called Joseph Elders, a friend of Snow's and Kirby's, who testified that he was in their home when the baby was around two weeks old and that he saw the baby experience what looked like a seizure and specifically saw the baby's eyes "shaking back and forth." He said that he told Kirby that it looked like a seizure, but she said that "all of her newborn babies did that because their eyes are just adjusting to the light." Elders said that Snow was not in the room when he and Kirby had this conversation.
The State also played excerpts from the videos taken on Snow's phone; in the videos, Snow repeatedly expressed concern over the baby's behavior and said that he had arranged for a friend to take them to the hospital if needed. At the close of the State's case, Snow moved for a directed verdict. On the battery charge, he argued that the State had failed to prove that he had caused the injuries; on the endangering charge, he argued that the State had failed to show that he had acted purposely to create a substantial risk of death or serious physical injury to a minor. The circuit court stated that it was a close case, "but based on circumstantial evidence I think enough has been put forward to get past a directed verdict." The defense rested without presenting additional evidence, and Snow renewed his directed-verdict motion, which was again denied. The jury found Snow guilty of both charges, and the court sentenced him to thirty-five years for battery and six years for endangering the welfare of a minor, to run consecutively. He now appeals his convictions.
A directed-verdict motion is a challenge to the sufficiency of the evidence. Holland v. State , 2017 Ark. App. 49, 510 S.W.3d 311. Our test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Wells v. State , 2017 Ark. App. 174, 518 S.W.3d 106. Substantial evidence is evidence that would compel a conclusion one way or the other with reasonable certainty, without relying on mere speculation or conjecture. Henson v. State , 2014 Ark. App. 703, 450 S.W.3d 677. Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. Holland, supra. Circumstantial evidence may not provide the sole basis for a criminal conviction if it can be reconciled with the theory that someone other than the defendant committed the crime. Henson, supra. Two equally reasonable conclusions as to what occurred merely give rise to a suspicion of guilt, which is not enough to support a conviction. Fudge v. State , 341 Ark. 759, 20 S.W.3d 315 (2000). Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are all matters exclusively for the trier of fact. Holland, supra.
On appeal, Snow argues that his convictions relied solely on circumstantial evidence and that there was no direct evidence of who caused the baby's injuries. He also asserts that "if fault is attributed to the parents, then it is more likely that Alyssia (Kirby) Snow was the wrongdoer and not her husband, Jonathan." He notes that he was the one who memorialized the seizures on his phone and volunteered the videos to investigators, while Kirby had already lost custody of a child due to drug problems. Snow contends that the jury was *294 forced to rely on speculation and conjecture to conclude that he committed these crimes and that the State failed to exclude the reasonable hypothesis that Kirby was the person who inflicted the injuries.
The State counters that the evidence at trial showed that the baby sustained life-threatening injuries while in the care of Snow and Kirby, that both parents denied that any major accidents had occurred that could have caused the injuries, and that Snow said that Kirby had not hurt the baby. The State asserts that the jury could have reasonably inferred that Snow caused the injuries "given the improbable explanations for the bruising, the fact that [Snow] avoided getting medical attention for [the baby], who was plainly injured and in distress, and [Snow's] bizarre videos that he volunteered to investigating officers but never showed to a doctor."
A person commits battery in the first degree if he or she knowingly causes serious physical injury to any person four years of age or younger under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-13-201(a)(9) (Repl. 2013). Our case law makes clear that circumstantial evidence can be sufficient to support the conviction of battery of a child. See, e.g. , Reams v. State , 45 Ark. App. 7, 870 S.W.2d 404 (1994) ; Payne v. State , 21 Ark. App. 243, 731 S.W.2d 235 (1987). In Reams , this court affirmed the conviction of a mother for first-degree battery of her child, rejecting her argument that it was her live-in companion, and not she, who had severely abused her child. This court found that Reams's improbable statements explaining the injury, the nature of the injuries to the child, the medical evidence, and Reams's admission that she had the opportunity to abuse the child constituted substantial circumstantial evidence of guilt. Similarly, in Payne , we upheld a first-degree battery conviction for severe abuse of a child by a live-in boyfriend where there was a diagnosis of battered-child syndrome, Payne offered improbable statements explaining the circumstances of the child's injuries, and testimony from medical personnel demonstrated that the injury was not a result of an accident.
A common thread among these types of cases is that the accused offered an improbable explanation of the child's injuries that could not be reconciled with the medical evidence. The State suggests that we use the "improbable explanations for the bruising" as evidence of Snow's guilt, but the record shows that it was Kirby, not Snow, who offered the improbable explanations. The State also argues that the baby was in the care of only Snow and Kirby when the injuries occurred, that both parents denied any major accidents had occurred, and that Snow said Kirby had not hurt the baby. That only Snow and Kirby had access to the child does not indicate the guilt of one parent and not the other, nor does both parents' denial of any major accidents. It is true that Snow told investigators that Kirby had not hurt the baby, but he also said that he had not hurt the baby. And Kirby never indicated that Snow had hurt the baby. And though he did not immediately seek medical attention for the baby, this is not sufficient evidence that Snow, as opposed to Kirby, caused the harm. And finally, the video and accompanying commentary are certainly odd, but we cannot agree they are necessarily proof of guilt. The argument could just as easily be made that the fact that he made the videos is proof of his innocence and show the concern and uncertainty of a young father.
Based on the evidence presented, we hold that the State failed to exclude every other reasonable hypothesis; on this evidence it is just as reasonable to conclude *295 that Kirby was the perpetrator. As we said earlier, two equally reasonable conclusions as to what occurred may give rise to a suspicion of guilt, but that is not enough to support a conviction. Fudge, supra. Consequently, we must reverse and dismiss Snow's conviction for first-degree battery.
Snow's conviction for first-degree endangering the welfare of a child is another matter. A person commits the offense of endangering the welfare of a minor in the first degree if, being a parent, guardian, person legally charged with care or custody of a minor, or a person charged with supervision of a minor, he or she purposely engages in conduct creating a substantial risk of death or serious physical injury to a minor. Ark. Code Ann. § 5-27-205(a)(1) (Repl. 2013). The term "conduct" is defined as "an act or omission and its accompanying mental state." Ark. Code Ann. § 5-2-201(3) (Repl. 2013) (emphasis added). In this case, Snow saw the child seizing and appearing lifeless, as evidenced by the videos he recorded on his phone. By his own admission, the baby's distress was evident on Saturday afternoon, a full two days before the baby was taken to the doctor. Dr. Farst testified that the failure to seek immediate medical care exacerbated the baby's injuries, so Snow's conduct not only placed the child at substantial risk, but also resulted in significant further injury to the child. Under these circumstances, we hold that substantial evidence supports Snow's conviction for first-degree endangering the welfare of a minor.
Reversed and dismissed in part; affirmed in part.
Gladwin, Klappenbach, and Hixson, JJ., agree.
Murphy and Brown, JJ., dissent.