Cite as 2019 Ark. App. 469

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–18–976

| | |
|---|---|
| AKELA SHYLO BOWMAN<br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** October 23, 2019<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-17-44]<br><br>HONORABLE EDDY EASLEY, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

A Grant County Circuit Court jury convicted appellant Akela Shylo Bowman of murder in the first degree, a Class Y felony, and sentenced her to thirty years' imprisonment in the Arkansas Department of Correction. Bowman appeals her conviction, arguing that insufficient evidence existed to support the finding that she knowingly caused the death of her four-month-old son, K.S. For the following reasons, we affirm.

On January 25, 2017, emergency responders were dispatched to Bowman's residence after receiving a "code blue" call concerning a baby.[1] When paramedics arrived at Bowman's home, they found K.S. not breathing and unresponsive. He was immediately transported to Arkansas Children's Hospital for additional treatment.

---

[1]"Code blue" means that the patient is in dire need of medical attention. Examples include the patient not breathing or the patient's heart stopping.

At the scene, Bowman told law enforcement officers that K.S. had been born two months premature, that she fed him formula regularly, and that he was progressing normally. She opted not to ride with him in the ambulance to the hospital. Later that night, K.S. died at the hospital.

At trial, Dr. Steven Shirm, a thirty-year board-certified pediatrician who was on duty in the emergency room at Arkansas Children's Hospital the night K.S. died, testified on behalf of the State. He treated K.S., and following the child's death, he immediately contacted the coroner due to the "shock" of K.S.'s physical condition and his suspicion that "[t]he child appear[ed] to have been starved to death." When Bowman arrived at the hospital, she told the doctor that K.S. had been born two months premature but had taken to the bottle well and that she had experienced no problems feeding him.

Dr. Shirm testified that based on his medical experience and expertise, Bowman's explanation was "not at all consistent" with his observations and that a properly fed premature infant should have weighed approximately eight pounds by the age of four months. When K.S. was born on September 2, 2016, he weighed four pounds. When he was discharged from the hospital in October 2016, he weighed six pounds, one ounce. At the time of his death in January 2017, he weighed five pounds, eleven ounces.

Arkansas Children's Hospital social worker Trevor Arnett also testified at trial. He met and talked with Bowman the night K.S. died. Bowman repeated the same explanation she had given Dr. Shirm about K.S.'s being premature, and she seemed "very passive" in the situation. Bowman showed Arnett a picture of K.S. taken two weeks before his death, remarking "how well [K.S. was] doing" and "what a happy child he is" in the photograph.

2

Arnett went on to testify that K.S.'s condition in the photograph reminded him "of a Holocaust survivor, of someone who appeared to be starving . . . [and] suffering . . . [he] looked like someone who needed help."

A forensic autopsy established the cause of death as calorie malnutrition and ruled it a homicide. The forensic examiner's report noted that "the external appearance of the infant was one of extreme marasmus."[2] The lead forensic examiner testified this was caused by malnourishment, and she observed its effect on K.S.'s body during the autopsy, which included the skin's "very wrinkled" and "shriveled" appearance. The report detailed the physical appearance of K.S.'s body, which included eyes sunken into his orbital bones and clearly prominent skeletal features visible from beneath the skin. The autopsy report stated that these were "significant obvious [signs of] malnutrition," which would have been apparent for two weeks prior to death.

Bowman was interviewed by law enforcement personnel on January 31, 2017, as part of the criminal investigation surrounding K.S.'s death. During the interview, which was introduced into evidence at trial, Bowman stated that she had regularly fed K.S. Alimentum baby formula multiple times daily since his discharge from the hospital and that his condition appeared fine until the night of January 25. The jury heard Bowman's statement that "[K.S.] looked like he was staying the same weight, but getting longer, if you can understand what I'm saying[.]" The jury was presented testimony and exhibits that reflected that medical staff had instructed Bowman to feed K.S. twenty-two milligrams of Alimentum baby formula every three hours after he was discharged in October 2016.

---

[2]"Marasmus" is defined as severe undernourishment.

During the interview, Bowman stated that she had fed K.S. seven cans of this formula every month as directed and never really had leftovers. However, Bowman also admitted that she still had two cans of his monthly supply left when he died in late January.

A copy of a post from Bowman's Facebook account was also introduced into evidence as a trial exhibit. In the January 3, 2017 post, Bowman was attempting to sell four cans of "never opened" Alimentum formula. The Arkansas Department of Health sent Bowman a warning letter dated January 31, 2017, concerning the "suspicious" post, advising that the sale of government-issued formula is illegal and that any unused cans must be returned. Health department records indicate Bowman returned four cans of Alimentum baby formula on February 2, 2017.

At the close of the State's evidence, Bowman moved for a directed verdict because the evidence that she had knowingly caused K.S.'s death was insufficient. The circuit court denied the motion. The defense called seven witnesses at trial who testified to Bowman's care of the child. At the close of all the evidence, Bowman renewed her motion. The circuit court again denied Bowman's renewed motion for a directed verdict made on the same previous ground.

The jury then convicted Bowman of murder in the first degree, and this timely appeal is now properly before this court. On appeal, Bowman argues that the circuit court erred by denying the motions for directed verdict based on insufficient evidence that she acted knowingly, as required for conviction under Arkansas Code Annotated section 5-10-102(a)(3) (Supp. 2017). Specifically, Bowman argues that the evidence presented failed to establish that she acted knowingly in causing K.S.'s death: (1) there was testimony related

4

to her low IQ; (2) witnesses opined that she adequately cared for K.S.; and (3) the statutory definition of the offense was not met.

Our standard of review for a sufficiency challenge is well-settled. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Price v. State*, 2010 Ark. App. 111, at 8, 377 S.W.3d 324, 330. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 377 S.W.3d at 330–31. We affirm a conviction if substantial evidence exists to support it. *Id.*, 377 S.W.3d at 331.

The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Burley v. State*, 348 Ark. 422, 429, 73 S.W.3d 600, 605 (2002). Substantial evidence is defined as evidence forceful enough to compel a conclusion one way or the other without resorting to speculation or conjecture. *Price*, *supra*. Circumstantial evidence may constitute substantial evidence to support a conviction only if it excludes every other reasonable hypothesis other than the guilt of the accused, and the jury is charged with making this determination. *Snow v. State*, 2018 Ark. App. 612, at 5, 568 S.W.3d 290, 293.

The jury is responsible for weighing the evidence and assessing the credibility of witnesses. *E.g.*, *id.*, 568 S.W.3d at 293. The jury may believe all or part of any witness's testimony and is responsible for resolving questions of conflicting testimony and inconsistent evidence. *E.g.*, *id.*, 568 S.W.3d at 293. This is true even of opinion testimony offered by experts. *E.g.*, *Marcyniuk v. State*, 2010 Ark. 257, at 8, 373 S.W.3d 243, 250. A person's intent or state of mind is rarely capable of proof by direct evidence and most often is inferred

5

from the circumstances of the crime. *E.g.*, *Steggall v. State*, 340 Ark. 184, 190, 8 S.W.3d 538, 542 (2000). A jury is not required to lay aside common sense and may infer guilt from improbable explanations of incriminating conduct. *E.g.*, *Byrd v. State*, 337 Ark. 413, 421–22, 992 S.W.2d 759, 763–64 (1999).

A person commits first-degree murder if "[t]he person knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed." Ark. Code Ann. § 5-10-102(a)(3). "A person acts knowingly with respect to . . . [t]he person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist" or "[a] result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result." Ark. Code Ann. § 5-2-202(2)(A) & (B) (Repl. 2013).

Our appellate courts have repeatedly held that credibility of witnesses is an issue for the jury and not the court. *E.g.*, *Baughman v. State*, 353 Ark. 1, 5, 110 S.W.3d 740, 743 (2003). The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *E.g.*, *id.*, 353 Ark. at 6, 110 S.W.3d at 743. In accordance with these standards, we hold that there was substantial evidence presented to support a conclusion that Bowman was aware of the risk of death caused by K.S.'s obvious malnourishment and that she was aware that it was practically certain her conduct would cause K.S.'s death.

K.S. was the youngest of Bowman's six children.[3] Medical reports, exhibits, and testimony were presented at trial to prove that K.S. died of starvation. Photographs of K.S.'s body were admitted to show his condition after death. The forensic examiner's testimony and exhibits showed that K.S.'s death had been due to complications from calorie malnutrition caused by starvation. Multiple medical experts testified as to the malnutrition's effect on K.S.'s body, which included his eyes sunken in his orbital bones and his atrophic physical appearance. K.S.'s clearly emaciated condition—combined with Bowman's withholding of formula intended for him—supports the jury's conclusion she knew her conduct could cause K.S.'s death.

Bowman argues that because her IQ is only 75, she could not knowingly have caused K.S.'s death. However, as noted, Bowman had previously cared for K.S.'s five other premature siblings, all of whom survived infancy. Moreover, our supreme court has held that a low IQ does not preclude a finding that a defendant's acts were committed with the requisite mental state required to sustain a murder conviction, even for an offense requiring a higher mental state than "knowingly." *See Key v. State*, 325 Ark. 73, 78, 923 S.W.2d 865, 869 (1996).

Bowman also asserts that under Arkansas Code Annotated section 5-10-102(a)(3), the State was required to prove that K.S. died as a result of a single event or act on a date certain. However, her argument is not preserved for our court's review because it was not raised in her directed-verdict motions below. *See, e.g.*, *Walker v. State*, 318 Ark. 107, 108,

---

[3]All of Bowman's children were born premature. Four of Bowman's six children were in her custody when K.S. died.

7

883 S.W.2d 831, 831 (1994). The statute provides that a person commits murder in the first degree if "[t]he person knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed." Ark. Code Ann. § 5-10-102(a)(3). Bowman contends "the phrase at the time the murder was committed[,] clearly shows the legislative intent that some act was required to trigger application of Ark. Code Ann. § 5-10-102(a)(3) and not some passing of time"; but again, because this was not raised in her directed-verdict motions, we do not address it now.

Given our standard of review, we hold that substantial evidence supports the jury's verdict in the instant case. The evidence adduced at trial was sufficient to support a conclusion that Bowman knowingly caused the death of her infant son. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the conviction of murder in the first degree. Accordingly, we affirm.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Philip C Wilson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.