Cite as 2020 Ark. App. 45

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–19–379

| | |
|---|---|
| | **Opinion Delivered:** January 22, 2020 |
| KANIKKA S. JENKINS | APPEAL FROM THE DREW |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 22CR-17-161] |
| V. | HONORABLE SAM POPE, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Kanikka Jenkins was convicted by a Drew County Circuit Court jury of first-degree murder. She was sentenced to serve a term of fifteen years' incarceration in the Arkansas Department of Correction. On appeal, appellant argues that the evidence was insufficient to support a finding that she knowingly caused the death of her nineteen-month-old daughter, Talondon Jacobs. We affirm.

On August 30, 2017, at 5:04 a.m., appellant arrived at the Drew Memorial Hospital emergency room with her daughter, Talondon. Upon arrival, Talondon was not breathing. Appellant claimed that Talondon had choked on her milk, and after attempts to clear her airway were unsuccessful, she rushed Talondon to the hospital. Resuscitative attempts failed, and Talondon was pronounced dead less than an hour after she had been brought into the emergency room.

Dr. Jennifer Forsyth, a forensic pathologist with the Arkansas State Crime Laboratory, performed the autopsy. Dr. Forsyth determined Talondon's cause of death to be blunt-force injuries to her head and torso complicated by suffocation and ruled the manner of death a homicide. Bo Norris, an investigator with the Arkansas State Police Criminal Investigation Division, attended the autopsy and determined that an investigation into Talondon's death was needed. Following a search of the residence and Norris's interview with appellant, appellant was charged with first-degree murder.

At trial, Investigator Norris testified that he executed a search warrant on appellant's home and removed several items that were then submitted to the crime laboratory for analysis. Those items included (1) a sample of the mattress on appellant's bed, which had a red stain; (2) a baby blanket with a stain; (3) a pillow that had a dark stain; (4) pink children's pants with a substance near the leg; and (4) several cotton swabs of other red liquid stains found in the home. Norris testified that all of these items were submitted for testing to specifically determine if they contained blood or other bodily fluids matching Talondon. Testing determined that only the stain on the mattress was a positive match.

During trial, Norris's interview with appellant was played. In that interview, appellant repeatedly stated that on the day prior to Talondon's death, she [Talondon] was "fine" and "nothing appeared wrong to me," and "nothing seemed wrong with her, I swear to God. She was fine." She stated that she woke up in the night and gave Talondon a bottle and went back to bed, which was part of her normal routine. Appellant stated that she later heard Talondon throw up, and when she got up to check on her, she discovered that she was choking on her milk and could not breathe. Appellant claimed that she tried to clear

2

Talondon's airway and "get the milk out" but was unable to do so. She stated that she then rushed Talondon to the hospital and arrived at approximately 1:30 a.m.

When confronted with the fact that Talondon had a ruptured bowel and a broken clavicle, appellant denied that she had harmed her child and expressed her belief that no one else in the family had hurt her child. She further stated that she was unaware of any accidents that could have caused the injuries but offered that Talondon could have fallen off of a small trampoline in her daughter's bedroom. Appellant stated that "there was no one in my house that night other than me and my children."[1]

Dr. Forsyth testified that Talondon's cause of death was determined to be blunt-force injuries of the head and torso complicated by suffocation, and that the manner of death was homicide. She testified that there were bruises on Talondon's forehead and cheeks. Dr. Forsyth testified that she also found cuts, abrasions, and bruises on the inside of Talondon's lips and stated that such injuries in young children are indicative of pressure over the mouth. During the autopsy, Dr. Forsyth also noted that on her right side, Talondon's eighth, ninth, and tenth ribs had been broken as evidenced by a "callous" that forms when the bone begins to heal. Fractures to her left clavicle and to her left ninth rib were also discovered. Dr. Forsyth opined that those injuries were hours to twenty-four hours old as they displayed no sign of healing. She also testified that there was evidence of blunt-force trauma to her internal organs; specifically, there was bleeding near the dome of her liver and near the head of her pancreas. Dr. Forsyth also found that her colon was ruptured, which she opined was

---

[1]This statement conflicts with appellant's previous recounting of that night in which she stated when she rushed Talondon to the hospital, Robert Anthony Thomas (appellant's boyfriend) and Curlee Jenkins (appellant's father) were both in the home.

the result of a blow to the abdomen. None of the injuries to Talondon's internal organs showed evidence of healing. Dr. Forsyth testified that in her expert opinion, the injuries were not the result of Talondon's falling off a trampoline. She stated, "Injuries to multiple parts of the body, the head, the torso, and the mouth are at different stages of healing. It certainly wouldn't be from a single-incident fall from a low height."

At the close of the State's evidence, appellant moved for a directed verdict arguing that the evidence was insufficient to support a conviction because the jury would have to resort to speculation to find appellant guilty of first-degree murder. The circuit court denied the motion. The defense then rested without calling any witnesses. Appellant renewed her motion for directed verdict, which the circuit court again denied.

The jury then found appellant guilty of first-degree murder in Talondon's death and sentenced her to serve fifteen years' incarceration. Appellant timely appeals the conviction, arguing that the circuit court erred by denying her directed-verdict motions.

A motion for a directed verdict is a challenge to the sufficiency of the evidence.[2] The court views the evidence in the light most favorable to the State and only considers evidence that supports the verdict.[3] The verdict is affirmed if it is supported by substantial evidence, direct or circumstantial.[4] Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting

---

[2]*Lowry v. State*, 90 Ark. App. 333, 205 S.W.3d 830 (2005).

[3]*Satterfield v. State*, 2014 Ark. App. 633, 448 S.W.3d 211.

[4]*Id.*

to speculation or conjecture.[5] Circumstantial evidence may constitute substantial evidence if it excludes every other reasonable hypothesis other than the guilt of the accused, and the jury is charged with making this determination.[6]

The jury is responsible for weighing the evidence and assessing the credibility of witnesses.[7] The jury may believe all or part of any witness's testimony and is responsible for resolving questions of conflicting testimony and inconsistent evidence.[8] This is true even of opinion testimony offered by experts.[9] A person's intent or state of mind is rarely capable of proof by direct evidence and most often is inferred from the circumstances of the crime.[10] A jury is not required to lay aside common sense and may infer guilt from improbable explanations or incriminating conduct.[11]

Arkansas Code Annotated section 5–10–102(a)(3) (Supp. 2017) provides that a person commits first-degree murder if he or she "knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed." "A person acts knowingly with respect to . . . [t]he person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances

---

[5]*Id.*

[6]*Snow v. State*, 2018 Ark. App. 612, 568 S.W.3d 290.

[7]*Id.*

[8]*Id.*

[9]*Marcyniuk v. State*, 2010 Ark. 257, 373 S.W.3d 243.

[10]*Steggall v. State*, 340 Ark. 184, 8 S.W.3d 538 (2000).

[11]*Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999).

exist" or "[a] result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result."[12]

It is well settled that the credibility of witnesses is an issue for the jury and not our appellate courts.[13] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's.[14] In light of these standards, we hold that there was substantial evidence presented to support appellant's conviction for first-degree murder.

Appellant argues that the State failed to present substantial evidence that she committed first-degree murder. Here, Talondon was determined to have died from blunt–force injuries and suffocation. Dr. Forsyth testified that Talondon sustained many injuries to her bones and internal organs, all at various stages of healing. Talondon also exhibited injuries to her mouth that are consistent with something being pressed over her mouth. Appellant indicated that Talondon was "fine" and that she had not noticed that anything was wrong with her or that she was in pain. However, the autopsy revealed that Talondon sustained many injuries, which Dr. Forsyth stated "would be painful to anyone."

There were other inconsistencies in appellant's statement. For instance, she claimed that she rushed Talondon to the hospital at 1:30 a.m., yet she did not arrive at the hospital until 5:04 a.m. Upon arrival, Talondon was already cold to the touch, indicating that she had stopped breathing long before she was brought to the hospital. Appellant's only

---

[12]Ark. Code Ann. § 5-2-202(2)(A) & (B) (Repl. 2013).

[13]*Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003).

[14]*Id.*

6

explanation for Talondon's internal injuries was a possible fall from a small trampoline; however, Dr. Forsyth discounted that theory.  A defendant's improbable explanation of suspicious circumstances may be considered evidence of guilt.[15]

Given our standard of review and viewing the evidence in the light most favorable to the State, we hold that the evidence adduced at trial constitutes substantial evidence and was sufficient to support appellant's conviction of first-degree murder in the death of Talondon.  Accordingly, we affirm.

Affirmed.

VIRDEN and SWITZER, JJ., agree.

*Robinson & Zakrzewski, P.A.*, by: *Luke Zakrzewski*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

---

[15]*Brunson v. State*, 368 Ark. 313, 245 S.W.3d 132 (2006).