Cite as 2025 Ark. App. 611

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CR-24-826

| | | |
|---|---|---|
| JAMES JACKSON | | **Opinion Delivered** December 10, 2025 |
| | APPELLANT | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32CR-23-81] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TIM WEAVER, JUDGE |
| | | AFFIRMED AS MODIFIED |
| | APPELLEE | |

## WAYMOND M. BROWN, Judge

Appellant James Jackson was found guilty at a jury trial of possession of methamphetamine and drug paraphernalia for which he was sentenced as a habitual offender to twenty years' incarceration in the Arkansas Division of Correction and fined $5,000. On appeal, Jackson argues (1) there was insufficient evidence that he constructively possessed the contraband; (2) there was insufficient evidence the paraphernalia was used to ingest methamphetamine; (3) the circuit court abused its discretion by permitting an officer to testify that the contraband was a "meth pipe"; (4) the circuit court imposed an illegal public-defender attorney fee; and (5) the circuit court imposed an illegal drug-crime assessment fee. The State concedes error on Jackson's final point, and we affirm as modified.

On April 20, 2023, Jackson was charged by criminal information as a habitual offender with possession of methamphetamine—between two and ten grams; and possession of drug paraphernalia with purpose to use methamphetamine.

Jackson's jury trial was held on August 8, 2024. Chief Deputy Aaron Moody with the Independence County Sheriff's Office testified that, on April 19, 2023, he conducted a traffic stop on a vehicle registered to Littleroy Davidson. Davidson, the driver of the vehicle, had a suspended driver's license. Jackson, sitting in the passenger seat, was the only other occupant of the vehicle. While speaking to Davidson, Chief Deputy Moody saw a plastic bag with what appeared to be methamphetamine on the center console in plain view. He removed Davidson from the vehicle and retrieved the bag from the console. Davidson denied that the bag belonged to him.

Chief Deputy Moody testified that he then ordered Jackson out of the vehicle and began a search of his person. After removing a cigarette lighter, he saw Jackson place his hand back in his left pants pocket and "manipulate" something. Chief Deputy Moody stated that, in his experience, Jackson's behavior indicated an attempt to conceal evidence, such as narcotics. In response, Chief Deputy Moody himself retrieved the item from Jackson's pocket. It was a black zipper pouch that contained numerous clear plastic bags; two of the bags contained a white crystalline substance he suspected was methamphetamine. He continued to search the area of the vehicle within reach of the passenger seat. A "glass smoking device" containing residue was found between the console and the passenger seat. Chief Deputy Moody testified that the pipe is consistent with a methamphetamine pipe. A brown sack containing marijuana and a grinder was also found. On cross-examination, Chief Deputy Moody testified that Jackson stated "they were smoking CBD" with the glass pipe; Davidson

2

denied any knowledge of the pipe. Chief Deputy Moody's body-camera footage of the traffic stop was admitted and played for the jury without objection.

Littleroy Davidson testified that he was pulled over by Chief Deputy Moody and received a citation for driving on a suspended license. Davidson denied ownership or knowledge of the bag of methamphetamine seen in plain view on the center console by Chief Deputy Moody during the traffic stop. He further denied ownership of the "meth pipe" that was found in the vehicle and stated that, other than Jackson, no other passengers had ridden in the vehicle in several days. Davidson acknowledged that he was charged with possession of the methamphetamine found on the console; he stated that he was promised leniency on that case in exchange for his testimony in the case at bar. He denied having "anything to do with" the black pouch containing methamphetamine found on Jackson's person.

Dammon McGilton, deputy commander of the Sixteenth Judicial District Drug Task Force, testified that he has vast experience working cases involving methamphetamine. He stated that he was contacted to assist with the investigation related to the traffic stop. Deputy McGilton described the evidence as including a black cloth-style bag containing two baggies of a white crystalline substance, a glass meth pipe with crystal meth in the bulb, and other baggies and paraphernalia. He testified that the items are "common in the use of methamphetamine." Deputy McGilton field-tested the contents of the bags and the "meth pipe" residue; both results were positive for methamphetamine. Jackson objected to the testimony about the field-testing results, arguing that it was not disclosed in discovery. He asserted that field-testing lacks scientific standards of certainty and that, without a report, Deputy McGilton's testimony violates the confrontation clause. The circuit

3

court overruled the objection as well as his renewed objection to Deputy McGilton's "continued reference to the pipe as a methamphetamine pipe."

Last, Lindsey Reith with the Arkansas State Crime Laboratory testified that she tested the evidence submitted in this case. Both bags that were in the black pouch found in Jackson's pocket contained methamphetamine. One bag contained a net weight of 1.45 grams of methamphetamine, and the second bag contained a net weight of 1.24 grams of methamphetamine, for a total weight of 2.69 grams of methamphetamine.

Jackson moved for a directed verdict after the State rested, contending the State failed to prove that he possessed the methamphetamine or the glass pipe and that there was no evidence that the paraphernalia contained methamphetamine residue. The circuit court denied the motion. The defense rested without calling witnesses. Jackson renewed his directed-verdict motion, which was again denied.

Following the jury trial, Jackson was convicted of possession of more than two grams but less than ten grams of methamphetamine and possession of drug paraphernalia. He was sentenced to an aggregate term of twenty years' incarceration. The sentencing order also noted a $5,000 fine, a $1,000 public-defender attorney fee, a $100 public-defender user fee, and $150 drug-crime-assessment fee. Jackson timely appealed.

On appeal, Jackson argues that there was insufficient evidence to support the convictions. Specifically, he asserts that the State failed to prove that he constructively possessed the contraband found in the jointly occupied vehicle.

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[1] We will affirm a judgment of conviction if substantial evidence exists to support it.[2] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[3] We defer to the jury's determination on the matter of witness credibility.[4] Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole.[5] The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be from direct evidence.[6] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's.[7] We need only consider testimony that supports the guilty verdict.[8] Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable explanation of the crime.[9]

---

[1]*Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[8]*Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600.

[9]*Robinson v. State*, 2016 Ark. App. 240, 491 S.W.3d 481.

Jackson was charged with possession of more than two but less than ten grams of methamphetamine in violation of Arkansas Code Annotated section 5-64-419(b)(1)(B)[10] and possession of drug paraphernalia in violation of Arkansas Code Annotated section 5-64-443(a)(2)(A).[11] Both offenses require a showing that he possessed the contraband.

To convict a person of possession, the State is not required to prove actual possession; constructive possession, which is the control or right to control the contraband, is sufficient.[12] Actual possession occurs when a defendant has actual physical possession of contraband.[13] Constructive possession requires that the State prove that the defendant exercised care, control, and management over the contraband.[14] Constructive possession may be established by circumstantial evidence and can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control.[15] However, joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession.[16] There must be some other factor linking the accused to the contraband.[17] Other factors to be considered in cases involving vehicles occupied by

---

[10](Supp. 2023).

[11](Supp. 2023).

[12]*Morgan v. State*, 2021 Ark. App. 220.

[13]*Id.*

[14]*Hyatt v. State*, 2023 Ark. App. 544, 680 S.W.3d 84.

[15]*Szczerba v. State*, 2017 Ark. App. 27, 511 S.W.3d 360.

[16]*Thomas v. State*, 2024 Ark. App. 159, 686 S.W.3d 576.

[17]*Id.*

more than one person are (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused; (4) whether the accused owned the car or exercised dominion and control over it; and (5) whether the accused acted suspiciously before or during the arrest.[18] There is no requirement that all or even a majority of the linking factors be present to establish constructive possession of the contraband.[19] An accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession.[20]

To the extent that Jackson argues that insufficient evidence supports a finding that he constructively possessed the bag of methamphetamine found in plain view on the vehicle's center console, it has no relevance here. Jackson was not convicted of or even charged with possession of the bag of methamphetamine located on the console. He was convicted of possession of the two bags containing approximately 2.7 grams of methamphetamine found on his person in the pocket of his pants. He fails to challenge the evidence supporting his *actual* physical possession of that contraband; therefore, we need not address it further.

We now turn to Jackson's conviction for possession of drug paraphernalia. Chief Deputy Moody testified that he found the glass pipe between the vehicle's console and the passenger seat where Jackson was sitting; because of its location, it could be said that it was under Jackson's

---

[18]*Id.*

[19]*Id.*

[20]*Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002).

dominion and control.[21]  Davidson, the driver and owner of the vehicle, denied knowledge of the glass pipe.  Jackson admitted knowledge of the glass pipe; he claimed that he used the pipe to smoke CBD.  Clearly, the glass pipe was found on Jackson's side of the vehicle in close proximity to his seat, he admitted knowledge and use of the pipe, and he had actual possession of methamphetamine that the pipe was used to ingest.  Viewing the evidence in the light most favorable to the verdict, we hold that substantial evidence supports a finding that Jackson constructively possessed the glass pipe.

Jackson next argues that there was "insufficient evidence that the glass smoking device was used to ingest meth."  He contends that, as testified by Chief Deputy Moody, Jackson claimed that the pipe was used to smoke CBD.  Jackson asserts that because no scientific testing was conducted by the crime lab to determine if the residue in the glass pipe was CBD or methamphetamine, his conviction must be reduced from a felony to a Class A misdemeanor.

In relevant part, Arkansas Code Annotated section 5-64-443(a)(2)(A) provides that it is unlawful for a person to possess drug paraphernalia with the purpose of using it to ingest methamphetamine into the human body.  A person's intent or state of mind is rarely capable of direct evidence and most often is inferred from the circumstances of the crime.[22]  A jury is not required to lay aside common sense and may infer guilt from improbable explanations or incriminating conduct.[23]

---

[21]*See Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994) (holding that it is not necessary for the State to prove an accused physically held the contraband in order to sustain a conviction if the location of the contraband was such that it can be said to be under the dominion and control of the accused).

[22]*Jenkins v. State*, 2020 Ark. App. 45, 593 S.W.3d 51.

[23]*Id.*

Insofar as Jackson asserts that, because of a lack of scientific testing on the residue, the evidence was insufficient to prove that the glass pipe was drug paraphernalia used for the purpose of ingesting methamphetamine, we find no merit. The State does not have to use chemical analysis to prove the identity of a controlled substance.[24] Chemical tests are not necessary to obtain a drug-related conviction.[25] Lay testimony may provide substantial evidence of the identity of a controlled substance, even in the absence of expert chemical analysis.[26]

During the search of Jackson's person, a black pouch containing two bags of methamphetamine was discovered in the pocket of his pants. The glass pipe was found directly beside Jackson's seat. Chief Deputy Moody testified, without objection, that the glass pipe was a "meth pipe" and was used to ingest methamphetamine. Additionally, Deputy McGilton testified, also without objection, that the glass pipe had "crystal meth in the bulb." The jury was not required to lay aside common sense, and we conclude that the lay testimony—even in the absence of chemical analysis—identifying the residue in the glass pipe as methamphetamine amounted to substantial evidence to support the jury's conclusion that Jackson possessed drug paraphernalia with the purpose of using it to ingest methamphetamine.

Next, Jackson argues that the circuit court abused its discretion by permitting Deputy McGilton "to repeatedly testify the contraband was a meth pipe." He contends that Deputy McGilton's testimony was improper because it mandated a legal conclusion and was unduly

[24]*Abernathy v. State*, 2024 Ark. App. 532, 699 S.W.3d 842.

[25]*Kellensworth v. State*, 2021 Ark. 5, 614 S.W.3d 804.

[26]*Abernathy*, *supra*.

9

prejudicial. Specifically, Jackson asserts that Deputy McGilton's opinion testimony was improper because it invaded the province of the jury and mandated two legal conclusions: (1) that the contraband was a pipe; and (2) that the pipe was used to ingest methamphetamine. He contends that Deputy McGilton's testimony "[told] the jury to find against Jackson on two key elements of the paraphernalia charge without any proof or corroboration." This argument is not preserved for review.

At trial, Jackson objected to Deputy McGilton's testimony that the contraband was a methamphetamine pipe on the basis that field-testing on the glass pipe was not disclosed in discovery in violation of the confrontation clause. He also argued that field-testing does not meet the required scientific standards of certainty. Jackson failed to object to the relevant testimony on grounds that it mandated a legal conclusion or that it was unduly prejudicial. A party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial.[27]

Additionally, the law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity; otherwise, he has waived his argument regarding that issue on appeal.[28] Chief Deputy Moody had already testified, without objection, that the glass pipe found by Jackson's seat was a meth pipe used to ingest methamphetamine. Because Jackson failed to object at the first opportunity, we conclude, for this reason also, that his argument is not preserved for appellate review.

[27]*Allen v. State*, 2025 Ark. App. 124, 707 S.W.3d 516.

[28]*Scarbrough v. State*, 2024 Ark. 71, 687 S.W.3d 557.

10

Jackson next argues that the circuit court imposed an illegal attorney fee beyond the public-defender fee authorized by statute. He contends that the circuit court illegally imposed a public-defender attorney fee of $1,000 in addition to a $100 public-defender user fee. Jackson asserts that the relevant statute authorizing a public-defender user fee permits a maximum fee of $400, and as such, the $1,000 public-defender fee is illegal and must be reversed.

Sentencing is entirely a matter of statute in Arkansas.[29] A circuit court has authority to correct an illegal sentence at any time; a sentence is illegal on its face when it is beyond the circuit court's authority to impose.[30] Sentencing shall not be other than in accordance with the statute in effect at the time of the commission of the crime.[31] The petitioner bears the burden of demonstrating that his or her sentence is illegal on its face.[32]

Jackson is correct that he was ordered to pay a $100 user fee and then was additionally assessed a $1,000 fee after a public defender represented him at trial. However, he is mistaken in his contention that the $1,000 fee exceeds the maximum authorized by statute.

Arkansas Code Annotated section 16-87-213(b)(1) provides that, at the time of appointment of an attorney, the court shall immediately assess a fee of not less than ten dollars nor more than four hundred dollars to be paid to the Commission in order to defray the costs of the public-defender system. Pursuant to this statute, at the time he was appointed a public defender, Jackson was assessed

---

[29]*Williams v. State*, 2025 Ark. App. 121, 708 S.W.3d 73.

[30]*Id.*

[31]*Malone v. State*, 2025 Ark. App. 83, 705 S.W.3d 896.

[32]*Id.*

a $100 public-defender user fee. Importantly, the statute also contemplates additional fees. Subdivision (b)(3) of the statute provides that the fee under the aforementioned subdivision (b)(1) shall be collected at the beginning of the proceeding and is separate from any additional attorney's fee that might be assessed by the court.[33]

Arkansas Code Annotated section 16-87-218(b) further provides that at the time of final disposition of any charges pending against a defendant represented by a public defender, the public defender shall ask the court to enter a judgment against the defendant in favor of the State of Arkansas for legal services rendered by the public defender. The nonbinding fee schedule contemplates that when the disposition of a Class C or Class D felony offense results from trial, a judgment of up to $2,500 may be entered against the defendant for the public-defender services.[34] Jackson was convicted of both a Class C and Class D felony. In accordance with Arkansas Code Annotated section 16-87-218(c)(4)(C), the circuit court was authorized to impose the $1,000 public-defender attorney fee at final disposition of the charges. We hold that Jackson has failed to demonstrate that this sentence is illegal.

For his last point on appeal, Jackson contends that he was assessed a $150 drug-assessment fee, which exceeds the $125 drug-assessment fee authorized by the statute in effect at the time of the commission of the offenses. The State concedes error, and we agree. Although the current version of Arkansas Code Annotated section 12-17-106(a)[35] authorizes a $150 drug-crime special assessment

---

[33]Ark. Code Ann. § 16-87-213(b)(3) (Supp. 2023).

[34]*See* Ark. Code Ann. § 16-87-218(c)(4)(C) (Supp. 2023).
[35](Repl. 2016).

12

against any person convicted of a drug crime, it became effective on August 1, 2023. Jackson's offenses were committed on April 19; the statute then in effect authorized only a $125 drug-crime special assessment. If we hold that a circuit court's sentence is illegal and that the error has nothing to do with guilt but only with the illegal sentence, we can correct the sentence in lieu of remand.[36] Therefore, we affirm Jackson's convictions for possession of methamphetamine and possession of drug paraphernalia but modify his sentence to reflect a drug-crime special assessment fee of $125.

Affirmed as modified.

TUCKER and WOOD, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[36]*Norton v. State*, 2018 Ark. App. 507, 563 S.W.3d 584.