Cite as 2020 Ark. App. 99

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-19-692

| | | |
|---|---|---|
| CARLTON SHUTES | APPELLANT | **OPINION DELIVERED:** FEBRUARY 12, 2020 |
| | | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CR-18-339] |
| V. | | |
| | | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Carlton Shutes was convicted in the Union County Circuit Court of first-degree battery and possession of a firearm by certain persons, and the jury sentenced him to 900 months' imprisonment. On appeal, he argues that insufficient evidence supports his conviction. We affirm because his argument is not preserved for appellate review.

Shutes was charged by amended information with aggravated robbery, first-degree battery, being a felon in possession of a firearm, and being a habitual offender. At the jury trial, Willie Simmons testified that he had known Shutes for over thirty years and that they had been smoking marijuana together at Simmons's apartment on July 21, 2017. He said that Shutes asked if he wanted "the last couple of ounces [of marijuana] that he had left," and Simmons accepted. Shutes left and came back after ten minutes. When Shutes knocked, Simmons let him in and walked away toward the kitchen, and Shutes locked the door and walked toward the living room. Simmons said that when he turned around,

Shutes was pointing a pistol at his face. He said that Shutes accused him of trying to set him up, and when Simmons walked toward him, Shutes shot him in the leg. Shutes then pulled out a bag and asked Simmons where he kept the money. Simmons told him he had $330 in his wallet, which was on the kitchen table. When Shutes went toward the kitchen, Simmons went to the front door and crawled through to the sidewalk. He told the people outside to call the police and an ambulance because Shutes had shot him and robbed him. He said that Shutes came out and was standing over him and that he kept hearing a click. After the clicks, Shutes ran down the stairs and away. Simmons said that Shutes stole the money from his wallet and took his cell phone and some cigarettes. Simmons explained that a titanium rod was placed in his leg at the hospital, and he was sent to Little Rock, where his surgery had to be redone. He underwent physical therapy for his leg for two or three months, and he said that he had suffered mentally and emotionally from the incident.

On cross-examination, Simmons identified a picture of his kitchen and said that he recognized a scale on the kitchen table and that he uses the scale to weigh marijuana. He also recognized the police scanner, rolling papers, and sandwich bags on the table.

Dr. Kenneth Gati testified that he is an orthopedic surgeon and that he was called to the hospital to examine Simmons on July 21, 2017. He said that Simmons had been shot in the leg, which was broken into multiple pieces. A metal rod was put into the middle part of the bone to stabilize the leg, and screws were placed through the bone and into the rod. Dr. Gati testified about the risks involved in gunshot wounds and surgery, including scarring, infection, nerve damage, and misalignment of the bones causing one leg to be shorter than the other.

2

Dorothy Coleman testified that she lives in the apartment below Simmons's. She said that she heard "a commotion" upstairs. When she heard a loud pop, she walked outside, looked up at the balcony, and heard Simmons yelling, "Help me . . . he shot me!" She said she did not know what he was saying until the door opened and Simmons fell out. She said that Shutes was standing over Simmons with a gun in his hand. She recognized Shutes and asked him what he was doing. She saw that he was holding a silver gun and that he was trying to load it. She said he was pulling back on the gun while standing over Simmons. She said that Shutes did not respond to her question, and when he stepped over Simmons and came down the stairs, she stepped back into her apartment because she did not know what he was going to do with the gun. She said that he left with the gun in his hand. She said that Shutes had been coming to Simmons's apartment for weeks and that she thought they were friends. After she called the ambulance, she went upstairs, and Simmons asked her to get his phone to call his girlfriend. She said that she did not find a phone in Simmons's apartment and that Simmons told her that Shutes had taken his money.

Tyrone Hampton testified that he also lives in the same apartment complex and that his apartment is next door to Coleman's. Hampton works with search and rescue for the Union County Sheriff's Office. He said that on July 21, 2017, he was in his apartment when he heard a big boom. Seconds later, he heard Simmons yelling for him. He went out and looked up. He saw Simmons lying on the ground, and Simmons said that Shutes had shot him. He saw Shutes standing over Simmons with a weapon in his hand pointed at Simmons's head. Hampton stepped back in his apartment and used his police radio to call dispatch, and when he stepped back out, Shutes had come down the stairs. Shutes

looked directly at Hampton then "took off and ran." He said that Shutes still had the weapon in his hand when he ran.

Tammie Martin testified that she is a criminal investigator for the El Dorado Police Department. She was sent to the scene of the shooting, and she observed blood in front of the apartment and on the door and a pool of blood inside Simmons's residence. She photographed the inside of the apartment. She found a shell casing on the living room floor and the victim's wallet, containing no cash, on the kitchen table, but she did not find any guns. She said that Shutes could not be found, that she eventually enlisted the U.S. Marshal Service to help find him, and that he was found almost a year later.

Scott Harwell testified that he is also a criminal investigator for the El Dorado Police Department and that he, too, was called to the scene that day. He arrived while Simmons was still lying on the second-floor balcony of the apartment complex. He said that Simmons identified his attacker as Shutes. Once Simmons was taken to the hospital by ambulance, Detective Harwell photographed the scene with Detective Martin. He said that Simmons had given them permission to search the apartment and that they found no other evidence aside from the blood and shell casing. He said that they seized the drug paraphernalia and the wallet. He said that they found no firearms, ammunition, marijuana, or narcotics.

Shutes's defense counsel moved for a directed verdict at the close of the State's evidence. Counsel argued in part:

> With regard to Count Two [battery], we still do not know what happened. There was an injury, there is not any question about there was a shooting, but whether the shooting was intentional or if it was either reckless or other [sic] negligent, we do not know. Again, we would be guessing were it to go to the jury right now. So, I would move for a directed verdict on both counts.

4

The circuit court denied the motion for directed verdict.

Shutes testified that he had known Simmons for over thirty years and that they had never had any problems. He admitted that he had been convicted of felonies in the past. He said that he was with Simmons on July 20, 2017, and that they had smoked marijuana. He said that he obtained cocaine for Simmons in exchange for $300. He said that Simmons put it on the scale and that they both saw that the cocaine weighed seven grams. He said that on July 21, he went back to Simmons's apartment and that Simmons was "irate." He said that he thought Simmons had "been up all night, or whatever, maybe his hand in the cookie jar, I do not know." He said that Simmons claimed that Shutes had shorted him on the cocaine. He said that he reminded Simmons that they had both seen the scale when the cocaine was weighed. He said that they argued and that Simmons's gun was on the table, where he always kept one. He said that this gun was different from the one Simmons usually kept. He said that Simmons argued about the cocaine's weight and said that he wanted his money back. He said that Simmons went toward the gun, and when he did, Shutes ran into him. Shutes said that he remembered grabbing Simmons's arm or wrist with one hand and that

> [w]ith the other arm, I tried to grab him. By that time, I guess he had got the pistol in his hand; this all happened pretty quick. I heard a pop myself, so I threw my hands up and just ran for the door and ran downstairs and took off because the fact I know that I am a felon and cannot be around guns.

Shutes's counsel moved for a directed verdict "based on the same reasons as before," and the circuit court denied it. The jury returned with a not-guilty verdict on the aggravated-robbery charge but found Shutes guilty of first-degree battery and of being a felon in possession of a firearm. He was sentenced to thirty years for the possession charge,

5

thirty years on the battery charge, and fifteen years for using a firearm in committing the battery.

Shutes filed a notice of appeal, and this appeal followed. Shutes argues that the circuit court erred by denying his motions for directed verdict. He contends that his conviction relies solely on circumstantial evidence. He claims that no direct evidence was produced that he was guilty of first-degree battery and that there were no corroborating witnesses to support Simmons's self-serving allegations. He claims that the State had the burden of proving that he acted with the "purpose" of causing serious physical injury to Simmons. Ark. Code Ann. § 5-13-201 (Supp. 2019). He contends that the State failed to prove that he acted with purpose. He also claims that circumstantial evidence was insufficient to convict because it left the jury to speculation and conjecture. *See Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000); *Delviney v. State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985).

The State asserts that Shutes's directed-verdict motion raised no challenge to what he now alleges is uncorroborated circumstantial evidence, no challenge to the State's purported failure to exclude every reasonable hypothesis but his guilt, and no challenge to the alleged lack of proof that he acted with the purpose of causing serious physical injury when he shot Simmons. Shutes argued, "we don't know what happened," and "we would be guessing" about "whether the shooting was intentional, [reckless, or negligent]" if the case "were to go to the jury right now." Defense counsel conceded that there was a shooting, and he did not challenge the sufficiency of the evidence establishing Shutes's possession of a firearm. Further, he admitted to Shutes's prior felony convictions. Thus, the directed-verdict argument did not mention the arguments on which he now relies.

We agree with the State's assertion. We have held that when an appellant advances an argument on appeal that is different from the one the appellant made in the directed-verdict motion at trial, we cannot consider it because a party cannot change the grounds for a directed-verdict motion on appeal but is bound by the scope and nature of the argument presented at trial. *Magness v. State*, 2012 Ark. App. 609, at 8, 424 S.W.3d 395, 401; *see also Marbley v. State*, 2019 Ark. App. 583, at 4, 590 S.W.3d 793, 796; *Petty v. State*, 2017 Ark. App. 347, at 3–4, 526 S.W.3d 8, 10–11. Appellate review is limited to those grounds that were presented to the circuit court. Accordingly, we affirm.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.